THE PEOPLE *ex rel.* WILLETT MOTOR COACH COMPANY *et al.*, Plaintiffs-Appellees, v. BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (4th Division)   No. 87—3319

Opinion filed May 26, 1988.—Rehearing denied June 27, 1988.

Jones, Ware & Grenard and Patricia J. Whitten and Edward G. Peterson, both of Chicago Board of Education, both of Chicago (Mitchell Ware, Martin Greene, Eileen Letts, and David S. Allen, of counsel), for appellants.

Tenney & Bentley, of Chicago (Richard Cochran, John Covington, and Edward Eshoo, Jr., of counsel), for appellees.

JUSTICE McMORROW delivered the opinion of the court:

The Board of Education of the City of Chicago (the Board of Education or Board) appeals from orders of the circuit court of Cook County that declared the Board obligated to award 1988 and 1989 summer school passenger bus service contracts for the Board's special education program to Willett Motor Coach Company (Willett); directed the Board to award those contracts to Willett; and found the Board in breach of contract for its failure to award the 1987 summer school passenger bus service contract to Willett. The trial court reserved determination of damages relating to this breach of contract for a subsequent evidentiary hearing. The Board appeals from the trial court's award of declaratory and injunctive relief.

We affirm.

BACKGROUND

According to pertinent evidence presented at trial and the language of the relevant documents, the Board solicited bids in the spring of 1986 for transportation services in its special education program from August 1, 1986, through August 31, 1989. Bids were solicited for four types of vehicles, which were categorized as follows: (1) 40-passenger school buses (Type I); (2) 16-passenger vans (Type II); (3) vehicles with ramps (Type III); and (4) vehicles with mechanical lifting

devices (Type IV). The Board's solicitation required that bids for the regular school year be made on separate proposal forms for each of the four types of vehicles set forth above. With respect to bids for transportation work during the summer school session, the 1986 special education solicitation provided in relevant part as follows:

"Summer School Service—There will be no guarantee that summer schools will be in session or that the schools in any geographical area will be utilized as summer schools. Both of these conditions depend on Board of Education action and approval, and are contingent on budgetary restraints.

If a bid is submitted for regular school year service in one or more geographical areas, you must also submit a bid for summer school service. If, and when it is determined that there will be summer school sessions, the successful bidder(s) will also be eligible for providing summer school service in *any* geographical area.

Since the number of vehicles required for summer school service will be less than the number required for regular school year service, the vendor with the lowest daily rate per vehicle ***, and for each type of vehicle, will be awarded summer school service, and subsequently to the vendor who quoted the next lowest daily rate per vehicle until the required number of vehicles have been obtained."

Willett's bid in response to this solicitation offered to provide all of the Board's 40-passenger buses during the regular school year at a daily rate of $138 per vehicle. It also included an alternate bid that offered to provide all the Board's 40-passenger buses during the regular school year at a daily rate of $124.15 per vehicle, provided Willett was also awarded contracts for at least a certain specified number of 16-passenger vans and vans with ramps. Willett also submitted a separate bid for summer school service in which it offered to provide 40-passenger buses at a daily rate of $108 per vehicle.

Thereafter the Board's bureau of purchasing submitted a report containing its recommendations regarding the award of transportation service contracts for the special education program. The bureau of purchasing proposed acceptance of Willett's alternate bid to provide all of the Board's 40-passenger buses and a certain number of 16-passenger vans and vans with ramps. The bureau of purchasing also suggested acceptance of the bids of Steward Bus Companies, Inc. (Stewart), and Student Transit Corp. (Student) to provide the remaining number of 16-passenger vans and vans with ramps which the Board would require during the regular school year. With respect to

summer school transportation awards in the special education program, the report listed all companies that were responsible bidders for the regular school year work in the program for each type of vehicle, ranking these companies according to their daily rate per vehicle. The Board adopted the recommendation of the bureau of purchasing in its entirety. Thus for the 1986-87 and 1987-88 regular school years, Willett was the only provider of 40-passenger buses for the special education program.

In April 1987, the Board approved the continuation of the special education program for the 1987 summer session. Although Board employees initially indicated to Willett that Willett would receive the 1987 summer school contract for 40-passenger buses, this was later countermanded by the superintendent of the Chicago public schools. Pursuant to the superintendent's direction, the award of 40-passenger bus service was made first to Stewart, whose bid was $103, then to Student, whose bid was $103.90, and then to Willett, whose bid was $108. Summer school classes began in mid-June 1987. For the 1987 summer school session, Stewart provided transportation services to 30 schools, Student serviced six schools and Willett serviced approximately 30 schools.

Willett filed an action in the circuit court of Cook County alleging that the Board's solicitation obligated it to award the summer school 40-passenger bus contract to Willett. As ultimately amended, Willett's complaint sought, *inter alia,* a declaratory judgment, preliminary and permanent injunctive relief, *mandamus,* and damages for breach of contract. The trial court denied Willett's separate motion for a temporary restraining order and set the matter for a hearing on Willett's "request for preliminary injunction." On the day scheduled for the preliminary injunction hearing, the court entered an order setting "the matter *** for trial on all issues, except damages, raised in" Willett's complaint regarding the award of the summer school passenger bus service contract.

Following trial, the court entered an order in September 1987 that declared the Board obligated to award the 1988 and 1989 summer school passenger bus service contracts to Willett, granted a "preliminary mandatory injunction" to direct the Board's award of the contract to Willett rather than any other bidders, and found the Board's failure to award the 1987 summer school contract to Willett to constitute a breach of contract. A hearing to determine damages for said breach of contract was scheduled for a later date. Thus the court decided all issues raised in Willett's complaint with respect to the summer school passenger bus service contracts except the ques-

tion of damages relating to breach of contract for the 1987 summer school period.

Construing the trial court's order as one for preliminary injunctive relief, the Board appealed therefrom pursuant to Illinois Supreme Court Rule 307(a) (107 Ill. 2d R. 307(a)). During the pendency of the appeal, the trial court, upon motion by Willett, entered an order in March 1988 finding that its September 1987 order was actually one for permanent injunctive relief. The trial court determined that this correction was appropriate under Illinois Supreme Court Rule 329 (107 Ill. 2d R. 329). At the request of the Board, the trial court's order further found no just reason to delay enforcement or appeal. (107 Ill. 2d R. 304(a).) The trial court's March 1988 order was entered *nunc pro tunc* to the date of its prior order in September 1987. The Board thereafter amended its notice of appeal to additionally indicate an appeal from the trial court's March 1988 order to the extent that it awarded permanent injunctive and declaratory relief.

OPINION

I

With respect to appellate jurisdiction in this case, the Board argues that because the trial court's September 1987 order awarded only preliminary injunctive relief, the Board's appeal therefrom was proper under Illinois Supreme Court Rule 307(a). The Board claims that under Supreme Court Rule 329, the trial court could not modify its decision so as to award permanent injunctive relief, because in so doing the trial court changed the entire nature of its proceedings and the instant appeal. The Board further contends that even if the trial court properly amended its order to reflect the award of permanent injunctive relief, this court nevertheless has jurisdiction by virtue of the trial court's finding of no just reason to delay enforcement or appeal.

■■ Initially we determine that the trial court properly corrected its September 1987 ruling to indicate the entry of a permanent injunction, rather than a preliminary injunction, against the Board. Illinois Supreme Court rule 329 states that "[m]aterial omissions or inaccuracies *** may be corrected *** by the trial court, either before or after the record is transmitted to the reviewing court." (107 Ill. 2d R. 329.) The record here shows that the trial court denied Willett's motion for a temporary restraining order. Instead of holding its scheduled hearing with respect to preliminary injunctive relief, the court set the matter for trial on *all* issues regarding the award of the sum-

mer school passenger bus contract except the question of damages regarding the Board's alleged breach of contract in the award of the 1987 summer school passenger bus service contract.

In this procedural context, it is apparent that the trial court intended to resolve the substantive merits of the parties' disputes (excepting contract damages) regarding the summer school passenger bus service contract. There is nothing in the transcript to indicate that the court's hearing on all issues except contract damages pertained to the possible award of solely preliminary, rather than permanent, injunctive relief. (Cf. *Lily of the Valley Spiritual Church v. Sims* (1988), 169 Ill. App. 3d 624 (court could not enter permanent injunction when record showed that court and parties anticipated hearing for limited purpose of preliminary injunctive relief).) Under these circumstances, we find no error in the trial court's correction of its order to reflect the award of a "permanent mandatory injunction." Also, because the trial court merely corrected an inaccuracy in its order, we cannot say that the trial court essentially altered the entire nature of the controversy it resolved between the parties.

■ We also determine that pursuant to Illinois Supreme Court Rule 329 and under the facts of this case, the trial court could correct its September 1987 order to include a finding of no just reason to delay enforcement or appeal, and thereby confer appellate jurisdiction upon this court. In our view, Rule 329 may be utilized to cure technical jurisdictional defects in a trial court's ruling with respect to a finding of no just reason to delay enforcement or appeal. By its express terms, Illinois Supreme Court Rule 329 does not preclude the trial court's correction of its order to remove technical deficiencies that prevent appellate jurisdiction. The rule "is a very broad provision whose object is to allow the record on appeal to be amended to correct inaccuracies, supply omissions *** and settle controversies as to whether the record on appeal accurately discloses what occurred at trial." (*People v. Chitwood* (1977), 67 Ill. 2d 443, 447, 367 N.E.2d 1331, 1333.) Thus, although "[r]esort to [a *nunc pro tunc*] order may not be for the purpose of supplying omitted judicial action, correcting judicial errors under the pretense of correcting clerical errors or curing a jurisdictional defect [citation]" (*Rauscher v. Albert* (1985), 138 Ill. App. 3d 799, 805, 485 N.E.2d 1362, 1366), a trial court's order under Illinois Supreme Court Rule 329 is not governed by all of the requirements of or limitations upon a *nunc pro tunc* ruling.

For example, a *nunc pro tunc* order is limited to the inclusion of omitted language, or the correction of obvious clerical error, in those cases where the court's intended disposition is memorialized in writ-

ing in the record. In contrast, Rule 329 explicitly allows correction of the record to correct "[m]aterial omissions or inaccuracies" regardless of whether the record includes a written memorial of the court's true intention. (See *People v. Chitwood* (1977), 67 Ill. 2d 443, 367 N.E.2d 1331; *People v. Whitehead* (1980), 87 Ill. App. 3d 885, 409 N.E.2d 358; *People v. Thornton* (1978), 61 Ill. App. 3d 530, 535-38, 378 N.E.2d 198; *People v. Henderson* (1977), 54 Ill. App. 3d 46, 369 N.E.2d 556.) In addition, a *nunc pro tunc* order may not be entered more than 30 days after the court's initial ruling, whereas a correction of the court's order under Supreme Court Rule 329 is permissible at any time before or after the record has been transmitted to the appellate court. See, *e.g.*, *In re J.B.* (1985), 138 Ill. App. 3d 958, 487 N.E.2d 52.

■ In reaching the conclusion that Rule 329 permits a trial court's correction of its order to include a finding under Rule 304(a), we are cognizant of the difficulties presented to both bench and bar when a court order, from which the trial judge fully intended to permit an appeal, inadvertently omits or misstates the required Rule 304(a) language. (See, *e.g.*, *Hamer v. Lentz* (1987), 155 Ill. App. 3d 692, 508 N.E.2d 324; *Rauscher v. Albert* (1985), 138 Ill. App. 3d 799, 485 N.E.2d 1362.) Rule 329's allowance of a trial court's correction of the record to remedy such inadvertent omission or misstatement of a Rule 304(a) finding provides a sound and expeditious procedure that obviates dismissal for lack of appellate jurisdiction with its attendant repetition and delay.

Also, utilization of Rule 329 to cure omission or misstatement of a Rule 304(a) finding does no violence to circuit court or appellate jurisdiction. Because a trial court's omission or misstatement of a Rule 304(a) finding does not divest the trial court of jurisdiction over the cause, the trial court may properly exercise its retained jurisdiction to enter an appropriate Rule 304(a) finding after the notice of appeal has been filed. (See, *e.g.*, *Lurz v. Panek* (1988), 166 Ill. App. 3d 179, 519 N.E.2d 1110.) In addition, use of Rule 329 to correct technical jurisdictional defects with respect to a Rule 304(a) finding promotes a fundamental objective of Rule 304(a) "that the merits of the appeal be decided as soon as possible, so that an ultimate, and consistent, determination of the claims of all parties to the action can be speedily effected." (*Elg v. Whittington* (1988), 119 Ill. 2d 344, 354, 518 N.E.2d 1232, 1236.) Because the instant appeal involves the core of the parties' dispute, and the greater part of the legal issues presented therein, our recognition of appellate jurisdiction in this case represents an appropriate and efficacious fulfillment of the objective of

Rule 304(a). Accordingly we conclude that we have jurisdiction to consider this appeal on its merits.

## II

With respect to the substantive questions presented herein, the Board contends that the plain language of its solicitation allows the Board to award the summer school passenger bus contract to companies that have been awarded regular school contracts for other types of vehicles than passenger buses. Thus the Board argues that it may award a summer school contract for a certain type of vehicle to a company that has received a regular school year contract for a different type of vehicle. We disagree.

■ The primary objective in construing a contract is to determine the plain meaning of its language in order to ascertain and give effect to the intent of the parties. The agreement must be given a fair and reasonable interpretation according to all of its language and provisions as a whole in order to give meaning and effect to every provision thereof. *United Airlines, Inc. v. City of Chicago* (1987), 116 Ill. 2d 311, 318, 507 N.E.2d 858; *Shelton v. Andres* (1985), 106 Ill. 2d 153, 159, 478 N.E.2d 311; *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 67, 294 N.E.2d 272.

■ In the case at bar, the Board's solicitation, when construed as a whole and according to its plain language, requires separate bids for each type of vehicle during the regular school year. It also requires a bid for summer school service for every type of vehicle on which a bid is made for services during the regular school year. If summer school is to be held, the Board's solicitation states that summer school awards will be made to those who were "successful bidder(s)" for the regular school year. In its commonly understood meaning in the context of the Board's solicitation, a "successful bidder" is a bidder who has been awarded a contract for the provision of transportation services for a particular type of vehicle during the regular school year. Thus, in order to be eligible for and as a prerequisite to the award of a summer school transportation service contract for a particular type of vehicle, the company must initially have been awarded a contract to provide that type of vehicle service during the regular school year.

If the Board engages two or more companies to provide 40-passenger buses during the regular school year in the special education program, the solicitation permits the Board to award summer school contracts for that type of vehicle to those "successful bidder(s)." According to the terms of the solicitation, however, the Board cannot award the summer school passenger bus contract to a company other

than that which provided passenger bus service during the regular school year, for any other company would not be a "successful bidder" with regard to passenger bus services.

The Board maintains that the solicitation's requirement of separate bids for each type of vehicle is no more than an administrative convenience designed to facilitate the bureau of purchasing's compilation of data in its report to the Board. When the Board's solicitation is construed as a whole, however, it is readily apparent that the significance of awarding a contract to only "successful bidders" with respect to distinct types of vehicles is greater than the administrative convenience offered by the Board on appeal.

The solicitation specifies that by a certain date (August 1986), successful bidders had to provide insurance certifications, certification that vehicles met age and inspection standards, certification that all drivers possessed school bus operator permits and valid Illinois driver's licenses, certification of registration of vehicles, identification of spare vehicles available for service, and a performance bond. The solicitation makes no separate and comparable requirements for summer school vehicles. These provisions in the solicitation indicate that the purpose of requiring separate bids for distinct types of vehicles, and the award of regular and summer school contracts according to these types of vehicles, is to avoid separate summer certifications and inspections. In this manner, the same vehicles certified and inspected for regular school year services will be already certified, inspected, and ready for use during the summer school session. Thus the requirement of separate bids for distinct types of vehicles allows the Board to select the various companies that are the "lowest responsible bidders" with respect to those particular categories of transportation services listed in the solicitation.

■■ The Board also asserts that by Illinois statute (Ill. Rev. Stat. 1985, ch. 122, par. 10–20.21), the Board is obligated to award all contracts to the *"lowest* responsible bidder." The Board argues that because Willett's summer school bid is not the lowest price per vehicle for passenger buses for the summer session, the Board cannot award the summer school contract to Willett. However, under the express terms of the solicitation, the regular school year and summer school passenger bus contracts must be considered in the aggregate. The record here does not show that the award of both the regular and summer school passenger bus contracts to Willett will violate the directives of the statute.

Moreover, the concept of "lowest responsible bidder" involves considerably more than solely the monetary amount of a company's

bid, and also encompasses considerations of the financial solvency of the carrier and its ability to perform the contract in a timely and responsible fashion. (See, *e.g., S. N. Nielsen Co. v. Public Building Comm'n* (1980), 81 Ill. 2d 290, 299, 410 N.E.2d 40; *Armstrong v. Crystal Lake Park District* (1985), 139 Ill. App. 3d 991, 998, 487 N.E.2d 648.) By restricting the award of the summer school passenger bus contract to the "successful bidder(s)" for the regular school year passenger bus contract, the solicitation ensures that the companies found "lowest responsible bidders" for a particular type of vehicle service during the regular school year will be available to provide summer school service for that category of vehicle, in the event summer school is held. Also, the prospect of summer service acts as an incentive to bidders to offer a lower rate for the regular school year contract. As a result, the solicitation fosters the Board's selection of a company that is the "lowest responsible bidder" for a certain category of transportation service needed in the Board's special education program for both the regular school year and summer school sessions. Accordingly, we find the Board's argument insufficient ground to reverse the trial court's order in this case.

■ Furthermore, assuming *arguendo* that the solicitation was ambiguous and in need of external evidence to construe its terms, the Board's past construction of previous, similar solicitations for the program demonstrates that the Board previously interpreted the solicitation to restrict summer school passenger bus service awards to those companies who provided that type of vehicle service during the regular school year. (See generally *Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 293, 469 N.E.2d 178.) The record clearly indicates, and the Board does not dispute, that the solicitations for three-year special education program transportation contracts from 1980 to 1983, and from 1983 to 1986, were virtually identical to the solicitation at issue in the case at bar. With respect to each of these previous solicitations, the Board awarded summer contracts, by type of vehicle, only to those carriers who had provided that vehicle type service during the regular school year, even though the carrier's bid for summer service was not the lowest rate per vehicle for the summer session. Given this evidence, the Board's solicitation here required the Board to award the summer school passenger bus contract to the bidder(s) who was awarded the contract for passenger buses during the regular school year.

■ The Board also argues that its decision to award the summer school passenger bus contract to a certain bidder cannot be set aside by the court absent a showing that the Board's decision is fraudulent or beyond the Board's authority. The Board further maintains that be-

cause Willett has neither alleged in its complaint not presented proof to the trial court of such fraud or lack of authority, the allegations of Willett's complaint regarding the award of the summer school passenger bus contract utterly fail to state a claim for which relief can be granted.

As a general rule, a Board's determination of which bidder is the "lowest responsible bidder" to receive a public contract will not be disturbed by the court absent a showing of fraud or illegality, palpable error in the exercise of discretion, or arbitrary, capricious action on the part of the Board. (See, *e.g., People ex rel. Peterson v. Omen* (1919), 290 Ill. 59, 67, 124 N.E. 860; *Burt v. Board of Education* (1985), 132 Ill. App. 3d 393, 396, 477 N.E.2d 247; *Leo Michuda & Son Co. v. Metropolitan Sanitary District* (1981), 97 Ill. App. 3d 340, 346, 422 N.E.2d 1078; *Willett Motor Coach Co. v. Board of Education* (1981), 103 Ill. App. 3d 760, 768, 431 N.E.2d 1190, *cert. denied* (1982), 459 U.S. 944, 74 L. Ed. 2d 202, 103 S. Ct. 258.) However, this rule has no application to the issues raised in the case at bar. Here, Willett raises no issue regarding the qualifications of any company as a "lowest responsible bidder." Rather, Willett maintains that the Board's solicitation, pursuant to which Willett was found to be the "lowest responsible bidder" and therefore awarded the regular school year passenger bus contract, obligates the Board to award the summer session passenger bus contract to Willett. Also, although the Board appears to contend that the permanent injunction was erroneously entered because Willett failed to prove all the necessary elements to be entitled to permanent, mandatory injunctive relief, we deem the Board's argument in this respect waived for failure to raise it before the trial court.

The Board's motion for leave to file second amended notice of appeal to include review of the March 1988 orders is allowed. For the reasons stated, the circuit court of Cook County's permanent injunction and declaratory judgment orders are affirmed; and the mandate of this court is to issue herewith.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.