TOMMIE DUNLAP, Plaintiff-Appellant, v. ILLINOIS FOUNDERS INSUR-
ANCE COMPANY, Defendant-Appellee.

First District (1st Division)   No. 1—91—3002

Opinion filed July 26, 1993.

Hokin & Melber, of Chicago (Gary S. Hokin, of counsel), for appellant.

Leahy, Eisenberg & Fraenkel, Ltd., of Chicago (Thomas J. Finn and
John J. McInerney, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Tommie Dunlap appeals an order of the circuit court of Cook County denying plaintiff's complaint for a declaration that defendant Illinois Founders Insurance Company (Founders) owed plaintiff coverage under a fire insurance policy.

The record on appeal indicates the following facts. On July 6, 1989, Plaintiff filed his complaint for declaratory judgment against defendant. Plaintiff alleged that defendant issued a fire insurance policy to plaintiff for a multiple-unit apartment building at 304 West 154th Place in Harvey, Illinois. This policy provided in part as follows:

"SECTION VI—PERILS INSURED AGAINST
This policy insures against all direct loss caused by:
* * *

8. VANDALISM OR MALICIOUS MISCHIEF, meaning only the willful and malicious damage to or destruction of the property covered."

Plaintiff alleged that between August 13, 1988, and August 20, 1988, vandals entered the insured building and extensively damaged the building. Plaintiff promptly made a claim for coverage under the Founders policy. Defendant denied coverage, stating in part that: (1) plaintiff had fraudulently misrepresented material circumstances of the loss; (2) plaintiff had admitted that much of the property was damaged by theft, which is excluded under the policy; (3) plaintiff failed to protect the property from further loss; and (4) the loss was excluded from coverage under the terms of the policy. This last exclusion provided in part as follows:

"**Perils Not Included.** This company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly by: * * * (h) order of any civil authority * * *."

Plaintiff contended in his complaint that he was not guilty of fraudulent misrepresentation, that he did not violate the terms of the policy and that the policy did not exclude coverage for his loss in this instance.

Before trial, plaintiff gave a sworn statement to defendant. Plaintiff indicated in his statement that he acquired the building at issue in 1986. According to plaintiff, the building was insured by defendant from 1986, but the 1987 renewal policy was cancelled at some point for failure to pay the premium.

The case went to trial beginning on April 30, 1991. During the trial, deposition testimony of William Cattorini, who was hired by

Founders to inspect the building, was read into the record on at least two occasions. The record indicates that Cattorini inspected the building on July 28, 1988. Cattorini indicated that the vacant apartments had been boarded up, reflecting management's effort to maintain the building. Cattorini noted that exposed stairways were dry-rotting and recommended repairs. Cattorini also noted that a number of windows were broken or boarded up and recommended repair. Cattorini further noted that dry wall was broken, floor tiling was missing and buckling, and that some units were cluttered with debris and trash. Cattorini recalled that a number of units were vacant, but could not recall whether a majority of them were vacant. Cattorini noted in his report to defendant that the building was "starting to go," but that it could issue a policy for another year without a major catastrophe or claim against defendant.

Cattorini characterized the neighborhood in which plaintiff's building was located as run down and deteriorating, with many vacant buildings. He noticed gang slogans and groups of young adults on the street corners. He believed that the gangs vandalized the buildings in the neighborhood in order to further gang activities. He also stated that based on his personal knowledge of the neighborhood, it would be very difficult to put units that had been boarded up back into circulation.

Plaintiff testified that in early August 1988, 28 or 29 of the units in the building were occupied. Plaintiff stated that the building was receiving utilities and was in a state of good repair at that time.

Plaintiff testified that he left town on August 13, 1988, and returned on August 23, 1988. Plaintiff indicated that he viewed the building on August 24, 1988, and observed serious damage from vandalism had been done to the building; many windows had been broken. Approximately 24 of the units remained occupied. Plaintiff immediately called his insurance broker and spoke to an insurance adjuster the following day.

Tenants continued to vacate the building. Damage to the building from vandalism, including graffiti, also continued to occur. Plaintiff and Roy Atterbury, who had performed maintenance and janitorial work for the building, boarded up the vacant apartments as they became vacant. By the middle of September 1988, only seven or eight units remained occupied. Plaintiff signed the property over to the City of Harvey, which then destroyed the building. Plaintiff made a claim under his insurance policy, which defendant denied.

On cross-examination, plaintiff testified that he could not recall whether he had stated in an earlier affidavit that on August 2, 1988, the City of Harvey, acting through its building commissioner, posted a notice of nonoccupancy due to building code violations and terminated utility services. Plaintiff also denied, in a series of questions, that 80% of the units needed scraping and painting, repairs to doors, storm doors, window glass and screens. Plaintiff stated that he was unaware of any structural damage to the foundation of the building. Plaintiff admitted that there was a broken sidewalk at the property. Plaintiff also admitted that the stairs and rails and the landing could have used a major overhaul, but stated that it was nothing serious.

Leonard Campbell testified that he was employed as a building inspector for the City of Harvey. Campbell indicated that he determines building code violations as part of the ordinary course of his employment. Campbell indicated that after inspecting a building, he ordinarily did not report to anyone before determining whether there was a building code violation. In a case where the mayor or his director knew of the problem, Campbell stated that he would report the violations to them to determine whether they wanted the matter expedited or handled in the normal manner.

Campbell testified that he initially inspected plaintiff's building in March 1988. At that time, Campbell noted that there were housing code violations and that the building lacked a certificate of occupancy, i.e., the building had been rented without an inspection. Campbell sent notice of these violations to plaintiff. Campbell indicated that to his knowledge, these violations were never corrected.

Campbell then testified that he returned to plaintiff's building on July 6, 1988. In the basement of the building, Campbell observed water damage, trash and debris and evidence of rats. Campbell stated that the situation was deteriorating.

Campbell further testified that he returned to the building again on July 29, 1988. He handed a notice to all tenants indicating that there was unsafe equipment in the building and that the building was not fit for human occupancy.

This notice appears in the record in conjunction with a sworn statement plaintiff gave to defendant under the terms of the insurance policy at issue. The notice is dated July 29, 1988, and is addressed to all tenants of plaintiff's building from the City of Harvey. The notice indicates that all electrical power to the building will be shut off as of August 1, 1988, due to building code violations.

Plaintiff's sworn statement indicates that he received this notice from tenants on the evening of July 29, 1988. The papers included in conjunction with the sworn statement also include a letter from City of Harvey Building Commissioner William Jones to the Chicago Housing Authority asking for assistance to the tenants regarding relocation to other apartments.

Campbell testified that he reinspected the building on August 4, 1988, and observed numerous building code violations. Campbell related these violations in great detail in his testimony.

Campbell testified that he sent a letter by registered mail to plaintiff dated August 12, 1988, notifying plaintiff of the numerous building code violations. Campbell indicated that he received a receipt for certified mail dated August 16, 1988, signed by plaintiff. The receipt was admitted into evidence.

Campbell further testified that he visited the building on four or five other occasions in August and September 1988. He never saw anyone making repairs or boarding up apartments.

On cross-examination, Campbell was questioned about a complaint he filed in court regarding the building code violations in this case. Plaintiff asked about the purpose of filing such a complaint. A colloquy ensued between both counsel and the trial court, which indicated it did not see the relevancy of the question. The question was not answered. The trial court asked Campbell whether the court made a finding on the complaint; Campbell indicated that he did not know. Campbell denied that such complaints were filed to obtain eviction notices. Plaintiff renewed his question regarding the purpose of filing the complaint; the trial court again indicated that it saw no purpose to the inquiry.

Roy Atterbury testified that he helped plaintiff board up the building after the damage that occurred in August.

Doris Maul testified that she was a former tenant of plaintiff's building. She testified that in the middle of August 1988, the gas and electric companies shut off their services. The tenants began to vacate the premises. People began breaking into the apartments, breaking the windows and taking whatever they could out of the building.

Clyde Rowe testified that he was a contractor who viewed the building in July 1988, in order to give plaintiff an estimate for painting and redecorating work. Rowe stated that at that time, the building was nice and average. Rowe viewed the building again at the end of August 1988; doors were broken, dry wall was smashed and fixtures torn out of the building. Rowe saw the building a third

time in the middle of September 1988; the damage had become so severe that it was impossible to repair.

After receiving evidence and hearing argument, the trial court found in favor of defendant. The trial court concluded that coverage was excluded as being directly or indirectly caused by an order of civil authority. Plaintiff filed a motion for reconsideration, which was denied. Plaintiff now appeals.

Initially, we note that a trial court's denial of declaratory relief is discretionary and will not be reversed absent an abuse of that discretion. We also note, however, that this discretion is subject to searching appellate review and is not given the same deference accorded the trial court in other contexts. (*E.g., Schneiderman v. Kahalnik* (1990), 200 Ill. App. 3d 629, 633, 558 N.E.2d 334, 337.) In this case, the trial court determined that coverage was excluded because the loss was directly or indirectly caused by an order of civil authority under the terms of the policy.

Plaintiff questions whether the notice issued by Campbell was actually an order of civil authority. The parties have cited no Illinois case law addressing this specific issue, and our research has disclosed none. Instead, plaintiff cites a number of cases from other jurisdictions for the proposition that a loss does not fall within an "order of civil authority" exclusion when the order was outside the authority of the official who issued it. See, *e.g., Reed v. Newark Fire Insurance Co.* (1907), 74 N.J.L. 400, 65 A. 1053.

■ It has often been noted that this court is not bound by the decisions of the opinions of other State courts. (See, *e.g., People v. Lawrence* (1991), 208 Ill. App. 3d 292, 295, 566 N.E.2d 878, 881.) However, it is well established in Illinois that contracts of insurance are subject to the same rules of construction as other types of contracts. (*Butler v. Economy Fire & Casualty Co.* (1990), 199 Ill. App. 3d 1015, 1021, 557 N.E.2d 1281, 1285.) The primary objective of contract construction is to effectuate the intent of the parties; that intent should be determined, where possible, from the plain language of the document. See *People ex rel. Willett Motor Coach Co. v. Board of Education of the City of Chicago* (1988), 171 Ill. App. 3d 166, 174, 524 N.E.2d 1155, 1160.

■ In this case, the language of the exclusion relevant to the issue is unambiguous. The existence of an "order of civil authority" presupposes the existence of authority. Accordingly, we conclude that the policy exclusion in this case does not apply to actions outside the scope of the official's authority.

The question remains as to whether the official exceeded his authority in this case. A presumption exists that public officials act in accordance with the law. (*C B S, Inc. v. Partee* (1990), 198 Ill. App. 3d 936, 948, 556 N.E.2d 648, 655.) However, if contrary evidence is introduced, any such presumption disappears. See *Scheibel v. Groeteka* (1989), 183 Ill. App. 3d 120, 139, 538 N.E.2d 1236, 1249; *English v. Village of Northfield* (1988), 172 Ill. App. 3d 344, 347, 526 N.E.2d 588, 590.

■ The record in this case, including the July 29, 1988, notice, indicates that Campbell had the authority to make a finding that the building was unsafe for human habitation. The record contains no evidence as to whether Campbell had the authority to issue the type of notice issued here or whether some emergency situation existed. Given the aforementioned rules of presumption, it would appear that we should presume that Campbell acted within the scope of his authority in issuing the particular notice at issue here.

However, the rules regarding presumptions apply where a party has affirmatively failed to introduce contrary evidence. These rules coexist with the rule that a reversal may be warranted where a trial court's erroneous exclusion of evidence causes substantial prejudice and affects the outcome of the proceeding. (See *Leary v. Eng* (1991), 214 Ill. App. 3d 279, 284, 573 N.E.2d 352, 356.) The record indicates that plaintiff repeatedly attempted to question Campbell about a court action Campbell filed regarding the building at issue here. Plaintiff's questions were repeatedly interrupted by opposing counsel and the trial court. The record further indicates that the trial court did not see any purpose to the inquiry.

This court does see the purpose of the inquiry. If (as plaintiff suggests) Campbell's issuance of the notice of termination of utility services required judicial approval, Campbell's actions may have exceeded his authority. If there was no authority for Campbell's actions, the loss would fall outside the scope of the policy exclusion. The trial court mistakenly believed that the issue was irrelevant. Consequently, the trial court mistakenly precluded plaintiff from eliciting testimony that may have rebutted the presumption upon which the judgment relies. Given the record in this case, we cannot affirm the judgment based solely on the presumption that Campbell acted within his authority.

Of course, this court may affirm the decision of the trial court for any reason appearing in the record, regardless of whether the reasoning of the trial court was correct. (*Muck v. Van Bibber* (1992), 223 Ill. App. 3d 830, 835, 585 N.E.2d 1147, 1157.) However,

we are not required to search the record to affirm. (*Muck*, 223 Ill. App. 3d at 835, 585 N.E.2d at 1151.) Where there are multiple arguments left unresolved by the trial court, it may be more prudent in a particular case to vacate the judgment and remand the case for further proceedings. (See *Muck*, 223 Ill. App. 3d at 835-37, 585 N.E.2d at 1151.) This case, in which defendant interposed numerous defenses, is such a case.

For all of the aforementioned reasons, we vacate the judgment of the circuit court of Cook County and remand the case for further proceedings.

Vacated and remanded.

MANNING, P.J., and O'CONNOR, J., concur.