**Barbara GLUTZER, Plaintiff,**

v.

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.**

**No. 97 C 6695.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 7, 1999.

Arthur M. Gorov, Berkson, Gorov & Levin, Ltd., Chicago, IL, for Plaintiff.

Joseph J. Hasman, David Joseph Novotny, Janice L. Cleary, Laura Ann Smith, Peterson & Ross, Chicago, IL, for Defendant.

**MEMORANDUM OPINION AND ORDER**

ALESIA, District Judge.

Before the court is (1) defendant The Prudential Insurance Company of America's motion to strike plaintiff Barbara Glutzer's cross-motion for summary judgment; (2) defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c); (3) plaintiff's cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c); and (4) plaintiff's request for sanctions against Prudential pursuant to Federal Rule of Civil Procedure 11. For the following reasons, the court (1) denies defendant's motion to strike plaintiff's cross-motion for summary judgment; (2) grants defendant's motion for summary judgment; (3) denies plaintiff's cross-motion for summary judgment; and (4) denies plaintiff's request for sanctions against Prudential.

## I. BACKGROUND [1]

Plaintiff Barbara Glutzer ("Glutzer") is insured as a beneficiary under a certificate of coverage ("the certificate") issued by defendant The Prudential Insurance Company of America ("Prudential") to plaintiff's husband Norman M. Glutzer. After Prudential's refusal to cover a treatment for Glutzer's ovarian cancer, Glutzer filed a two-count complaint in Illinois state court against Prudential, asserting state law claims. Count I seeks injunctive relief, requesting the court to order Prudential to cover the expenses related to Glutzer's treatment and follow-up care. Count II is a request for declaratory judgment pursuant to 735 ILCS 5/2–701, requesting a judgment that Glutzer's treatment is necessary and generally accepted and is fully covered by the terms of the plan.

On September 23, 1997, Prudential filed a notice of removal in which Prudential contended that this court had original subject matter jurisdiction because (1) Glutzer's claim arose under, and is governed exclusively by, the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461

---

1. Unless otherwise indicated, the following facts are taken from the parties' Local General Rule 12(M) and 12(N) Statements. *See infra* Part II.B (addressing the impact of Glutzer's failure to comply with Local General Rule 12 on the court's determination of the undisputed facts).

("ERISA") and (2) pursuant to 28 U.S.C. § 1332, complete diversity between the parties exists[2] and the amount in controversy exceeds $75,000. Glutzer filed a motion to remand, arguing that this court did not have subject matter jurisdiction over the case. The court declined to remand the case because it had subject matter jurisdiction based on diversity of citizenship. At this time, the court did not reach the issue of whether Glutzer's claims arose under, and were governed exclusively by, ERISA.

On December 12, 1997, Prudential filed a motion to dismiss Glutzer's state law claims alleging that the claims were preempted by ERISA. The court denied Prudential's motion because from the pleadings the court was unable to determine whether the plan constituted an "employee benefit plan." After denying the motion to dismiss, the court granted Glutzer leave to amend her complaint to plead the relevant ERISA claims in the alternative to her state law claims. After reviewing Glutzer's amended complaint, the court explained in its July 28, 1998 order that Glutzer's insurance plan did not qualify as an "employee benefit plan" under ERISA because Mr. Glutzer is the sole employee of Norman M. Glutzer, P.C.

Currently, the court is reviewing Prudential's motion and Glutzer's cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Prudential moves for summary judgment on the grounds that Glutzer's treatment is excluded from coverage under an express policy which precludes benefit payments for experimental or investigational treatments which are determined by the prevailing opinion of a medical specialty to need further evaluation or are under study. Glutzer moves for summary judgment only on the ground that Glutzer's treatment is neither experimental or investigational under the terms of the exclusion because it was not provided as a part of a study. The court is also reviewing Prudential's request that the court strike Glutzer's cross-motion for summary judgment and Glutzer's request for Rule 11 sanctions against Prudential.

In order to understand this court's opinion, one must be aware of a number of facts. For the sake of clarity, a recitation of these facts is in two parts. Part A discusses events that occurred with respect to Glutzer's treatment and Prudential's denial of coverage. Part B discusses facts relating to the investigational or experimental nature of Glutzer's treatment.

## A. Events which occurred with respect to Glutzer's treatment and Prudential's denial of coverage

In and around May of 1995, doctors diagnosed Glutzer with ovarian carcinoma. From May of 1995 through May or June of 1996, Glutzer underwent treatment for her ovarian cancer. As part of her treatment, Glutzer received standard chemotherapy. Her final cycle of chemotherapy was on May 2, 1996. On or about December 5, 1996, Glutzer consulted with Dr. Steven Devine ("Devine") of Lutheran General Hospital's Cancer Center to discuss treatment options. One such option was the administration of High Dose Chemotherapy with a Peripheral Stem Cell Rescue ("HDCT/PSCR"). This treatment involves the administration of chemotherapeutic agents or drugs in doses that are so high that they destroy the bone marrow's ability to produce red blood cells. Thus, prior to the high dose chemotherapy, stem cells are removed from the patient's bloodstream and preserved. After the administration of the high dose chemotherapy, the patient's previously harvested stem cells are "transplanted" back into the patient's bloodstream. On or about February 10, 1997, Glutzer underwent an open laparoscopy and multiple peritoneal biopsies at Lutheran General Hospital which revealed evidence that the cancer had returned.

On April 24, 1997, Prudential received a letter from Devine requesting preauthorization for the proposed HDCT/PSCR treatment. Richard Kosierowski, M.D. of Prudential reviewed Devine's preauthorization request. Pursuant to that review, Prudential denied the request because Prudential found the treatment unnecessary or inappropriate

---

**2.** Glutzer is a citizen of Illinois. Prudential is a corporation organized under the laws of New Jersey and its principal place of business is New Jersey.

and experimental and investigational under the terms of an exclusion in Glutzer's certificate. Under the generally excluded charges section, the certificate states:

> (4) Charges For Experimental Or Investigational Services or Supplies: A charge for a service or supply is not covered to the extent that it is experimental or investigational. . . .
>
>> For the purpose of this exclusion a service will be considered "experimental or investigational" if Prudential determines that one or more of the following is true:
>>
>> (a) The service or supply is under study or in a clinical trial to evaluate its toxicity, safety or efficacy for a particular diagnosis or set of indications. Clinical trials include but are not limited to phase I, II, and III clinical trials.
>>
>> (b) The prevailing opinion within the appropriate specialty of the United States medical profession is that the service or supply needs further evaluation for the particular diagnosis or set of indications before it is used outside clinical trials or other research settings.
>>
>>> Prudential will determine if this item (b) is true based on:
>>>
>>> (i) Published reports in authoritative medical literature; and
>>>
>>> (ii) Regulations, reports, publications and evaluations issued by government agencies such as the Agency for Health Care Policy and Research, the National Institutes of Health, and the FDA.

On April 30, 1997, Devine verbally requested a Level I appeal from Prudential. In connection with the review, two outside consultant oncologists provided reports to Prudential which set forth their opinions on the treatment. Based on these reports, on May 23, 1997, a Prudential employee recommended that Prudential deny the appeal. Prudential's Director of Medical Services, Dr. Joseph Majdan, reviewed the case and upheld the decision to deny preauthorization and coverage for the treatment.

Despite the denial, on or about June 9, 1997 through July 1, 1997, Glutzer underwent the HDCT/PSCR treatment as an inpatient at Lutheran General Hospital. Glutzer did not have to sign a special informed consent document before she began the HDCT/PSCR nor was the HDCT/PSCR performed as part of any study or protocol.

During the treatment, Norman Glutzer requested a Level II appeal from Prudential in a June 11, 1997 letter. On June 29, 1997, the Director of Medical Services at Prudential, Dr. Stanley Chaplin, reviewed the case and upheld the previous decision to deny preauthorization and coverage for the treatment.

In a August 20, 1997 letter to Prudential, Glutzer's counsel requested a Level III appeal. In response to the request, on September 24, 1997, Prudential sent the case back to the consulting oncologists to review the latest information. Prudential's Corporate Appeals Committee thereafter voted to uphold the prior decisions to deny preauthorization and coverage for the treatment. On or before October 6, 1997, Prudential communicated this decision to Glutzer's counsel.

### B. Facts relating to the experimental or investigational nature of the treatment

High-dose chemotherapy of the type which was administered to Glutzer is being evaluated in clinical trials around the country. Currently, under the auspices of the National Cancer Institute, major cancer programs around the country, including Lutheran General Hospital, are participating in important Phase III trials of the treatment.[3] Under these Phase III trials, the programs specifically look at the value of the treatment for patients with ovarian cancer. Although these trials were not occurring at the time Glutzer underwent her treatment, Glutzer's treatment was performed under the same regime as the current Phase III trials. Me-

---

**3.** "Phase III involves randomized clinical trials in which some patients receive the experimental treatment . . . and others receive the conventional, nonexperimental treatment (standard chemotherapy). The responses of the two groups of subjects are documented, analyzed and compared to assess the efficacy of the experimental treatment." *Fuja v. Benefit Trust Life Insurance Co.*, 18 F.3d 1405, 1410 (7th Cir.1994).

morial Sloan–Kettering, M.D. Anderson and Emory University are also currently conducting clinical trials of this treatment for ovarian cancer patients.

At the time Devine first consulted with Glutzer in December of 1996, no Phase III trials of the treatment were yet in progress. However, Devine did inform Glutzer that the treatment was under study. There were multiple institutions conducting Phase I and Phase II studies of the treatment.[4] At no time was Glutzer treated as a participant in any of the Phase I or Phase II · studies.

Aside from these studies, there were a few publications relating to HDCT/PSCR. An editorial appearing in the *Journal of Clinical Oncology* criticized the effectiveness of the. HDCT/PSCR treatment outside of clinical trials. The editor writes:

> *Is there a defined role for high-dose chemotherapy with stem-cell support outside of a clinical trial in patients with ovarian carcinoma?* Evidence that supports a threshold dose-intensity beyond which no further enhancement of benefit is seen, the highly selected nature of patients populations included in phase II trials, ... and the absence of a completed phase III trial of stem-cell supported high-dose chemotherapy *all support an answer of no for now.*

J. Tate Thigpen, *Dose–Intensity in Ovarian Carcinoma: Hold, Enough?*, 15 J. CLINICAL ONCOLOGY 1291, 1293 (1997) (emphasis added). Also, a publication [5] from the United States Department of Health and Human Services, Heath Care Finance Administration ("DHHS") states that the DHHS's decision not to provide coverage for HDCT/PSCR to medicare patients with solid tumors is because insufficient data exists to determine the efficacy of the treatment. Medicare and Medicaid Programs; Quarterly Listing of Program Issuances and Coverage Deci-

sions—Second Quarter 1996, 61 Fed.Reg. 66676 (1996).

## II. DISCUSSION

### A. *Prudential's request to strike Glutzer's cross-motion for summary judgment*

Prudential requests that the court strike Glutzer's cross-motion for summary judgment because she did not obtain leave from the court to file her motion. Prudential, however, has not cited any case law or federal or local rule upon which it basis its argument. Thus, the court will not strike Glutzer's cross-motion for summary judgment and will rule on it.

### B. *Local General Rule 12*

■ Before addressing the merits of Prudential's motion and Glutzer's cross-motion for summary judgment, the court must address Glutzer's failure to comply with Local General Rule 12 ("Rule 12"). Rule 12(M) requires the party moving for summary judgment to file, among other items, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." LOCAL GEN. R. 12(M). The required statement is to consist of short numbered paragraphs, including within each paragraph specific cites to the record which support the facts set forth. *Id.* Rule 12(N) then requires the opposing party to file among other items:

> a concise response to the movant's statement that shall contain: (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the records, and other supporting materials relied upon, and (b) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials.

4. "In Phase I trials, the researchers attempt to determine patients' maximum tolerated dose of an agent (drug). In Phase II trials, the researcher is trying to assess the efficacy of a certain agent or combination of agents by analyzing the response of a statistically reliable number of subjects." *Id.*

5. Prudential calls this publication a regulation when in actuality it is called an actual coverage determination. It is similar to a regulation but is not a regulation.

LOCAL GEN. R. 12(N)(3). Rule 12(N) further provides that "all material facts set forth in the statement of the moving party will be deemed admitted unless controverted by the statement of the opposing party." *Id.* The Seventh Circuit has upheld strict compliance with Rule 12 on numerous occasions. *Huff v. UARCO Inc.*, 122 F.3d 374, 382 (7th Cir. 1997).

In this case, Prudential filed a proper Rule 12(M) Statement. In response, Glutzer submitted a Rule 12(N) Statement in which Glutzer in a single paragraph adopted "the facts alleged by Prudential from the Joint Stipulation of Uncontested Facts in the Final Pretrial Order" and "the exhibits attached to its Rule 12M." (Pl.'s 12(N) statement). Glutzer, however, did not specifically set forth any objections to facts which Prudential set forth in its Rule 12(M) statement which are not in the parties' joint stipulation of uncontested facts. This deficiency was pointed out in Prudential's reply memorandum; yet Glutzer has made no effort to correct the problem. "Under [R]ule 12(N), a failure to contest the opposing party's 12(M) facts is considered a binding admission of those facts." *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1313 (7th Cir.1995). Accordingly, to the extent the facts contained in Prudential's 12(M) statement are supported by the record, they are deemed admitted as they are uncontested. *See Dade v. Sherwin–Williams Co.,* 128 F.3d 1135, 1140 (7th Cir. 1997).

## C. Standard for deciding a motion for summary judgment

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Smith v. Severn,* 129 F.3d 419, 425 (7th Cir.1997).

The burden is on the moving party to show that no genuine issues of material fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. When cross-motions for summary judgment are filed, the "[c]ourt must take a dual perspective: [e]ach movant has the burden of establishing the absence of any genuine issue of material fact on its own motion." *ITT Industrial Credit Co. v. D.S. America, Inc.,* 674 F.Supp. 1330, 1331 (N.D.Ill.1987). Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505; *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989).

## D. Experimental or investigational nature of Glutzer's treatment

The issue before the court is a narrow one. The issue is whether it is an undisputed fact that the HDCT/PSCR procedure which Glutzer underwent is experimental or investigational under the certificate of coverage. Prudential claims that the procedure is experimental or investigational under the terms of the certificate based on an exclusionary clause in the contract. This clause excludes coverage for experimental or investigational procedures if (1) the prevailing opinion is that the procedure needs further evaluation before it is used outside clinical trials; or (2) the procedure is under study or clinical trial.

To determine whether the procedure is experimental or investigational under the terms of the certificate, the court must construe the insurance policy. The construction of an insurance policy is a question of law to be decided by the court. *Transamerica Ins. Co. v. South,* 975 F.2d 321, 327 (7th Cir.1992). Because this is a diversity case, this court looks to state substantive law to interpret the insurance policy. *See Erie R.R. v.. Tomp-*

*kins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Accordingly, this court will apply the Illinois' rules of contract interpretation because both parties concur that Illinois substantive law applies to this case.[6]

In Illinois, insurance contracts are subject to the same rules of construction as other types of contracts. *Dunlap v. Illinois Founders Ins. Co.,* 250 Ill.App.3d 563, 190 Ill.Dec. 233, 621 N.E.2d 102, 106 (1993). Under Illinois law, "an insurance policy should be applied as written if the words used in the policy can reasonably be given their plain, ordinary and popular meaning." *Anetsberger v. Metropolitan Life Ins. Co.,* 14 F.3d 1226, 1231 (7th Cir.1994); *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 161 Ill.Dec. 280, 578 N.E.2d 926, 930 (1991). Furthermore, the court is to construe any ambiguous language strictly against the insurer and in favor of the insured. *Anetsberger,* 14 F.3d at 1231.

Prudential's first basis for summary judgment is the exclusion for services which need further study according to the prevailing medical opinion within the appropriate specialty. This exclusion states:

> For the purpose of this exclusion a service or supply will be considered "experimental or investigational" if Prudential determines that one or more of the following is true:
>
> . . .
>
> (b) The prevailing opinion within the appropriate specialty of the United States medical profession is that the service or supply needs further evaluation for the particular diagnosis or set of indications before it is used outside clinical trials or other research settings.

Prudential will determine if this item (b) is true based on:

> (i) Published reports in authoritative medical literature; and

> (ii) Regulations, reports, publication and evaluations issued by government agencies.

Prudential bases its allegation that Glutzer's treatment was experimental or investigational under subsection (b) on the testimony of Dr. Markman, an editorial appearing in the *Journal of Clinical Oncology,* and a coverage determination of the DHHS. Glutzer has made no argument with respect to this provision of the insurance policy.

This court finds that this provision is not ambiguous and that the evidence Prudential has submitted in support of its finding the HDCT/PSCR treatment experimental or investigational meets the terms of the certificate. The policy calls for the determination of the prevailing opinion of a certain medical specialty to be based on published reports in medical literature and regulations, reports, publications and evaluations issued by government agencies. Prudential based its decision to deny coverage on the following: (1) an editorial in a medical journal and (2) a government publication.[7] Glutzer has not provided the court with any argument as to why these two publications would not constitute the prevailing medical opinion nor has Glutzer provided the court with any publication in support of any other prevailing medical opinion. The court, therefore, finds that this editorial and this government publication meet the requirement in the certificate that the decision be based on published reports in authoritative medical literature and government regulations, reports, publications, and evaluations. Thus, Prudential has shown that Glutzer's treatment was experimental or investigational under this provision of the certificate.

Prudential's second basis for summary judgment is the exclusion for services provided which are under a study or clinical trial. The court, however, need not address this basis because the certificate states: "For the purpose of this exclusion a service or supply

---

**6.** Although neither party has addressed the choice of law issue, the court finds that both parties assent to the application of Illinois law. The court bases this decision on both Prudential's and Glutzer's citation of Illinois case law in support of their arguments.

**7.** Prudential also submits a doctor's testimony in support of its decision to deny coverage. However, the court will not rely upon that testimony as it is not one of the bases for determination as identified in the certificate.

will be considered 'experimental or investigational' if Prudential determines that one or more of the following is true." Because this court has already found that Prudential properly excluded Glutzer's treatment under subsection (b), the court will not address Prudential's argument for non-coverage under subsection (a) nor Glutzer's argument for coverage under subsection (a).

### E. *Glutzer's request for Rule 11 sanctions*

At the conclusion of Glutzer's response brief, Glutzer asks the court to impose sanctions against Prudential pursuant to Federal Rule of Civil Procedure 11. Glutzer argues that Prudential brought its motion for summary judgment in bad faith and solely to harass Glutzer, to delay the trial and to increase Glutzer's costs.

Rule 11 requires that a motion for sanctions be made separately from any other motion. FED. R. CIV. P. 11(c)(1)(A). Glutzer did not file a separate motion for sanctions but made the request for sanctions in its response brief. Thus, the inclusion of the request for sanctions in Glutzer's response brief does not meet the requirements imposed by Rule 11. *See Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 151 (7th Cir.1996). Accordingly, the court denies Glutzer's request for Rule 11 sanctions against Prudential.

### III. *CONCLUSION*

For the foregoing reasons, the court (1) denies Prudential's motion to strike Glutzer's cross-motion for summary judgment; (2) grants Prudential's motion for summary judgment; (3) denies Glutzer's cross-motion for summary judgment; and (4) denies Glutzer's request for sanctions against Prudential. Final judgment in this case is entered in favor of defendant The Prudential Insurance Company of America and against plaintiff Barbara Glutzer.