34 F.3d 1045
 Anthony Corey EUKEN, an infant by his Next Friend and
Mother, Deborah EUKEN, as Legal Representative,
Petitioner-Appellee,
v.
SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES,
Respondent-Appellant.
 No. 93-5064.
 United States Court of Appeals,
Federal Circuit.
 Sept. 7, 1994
 
 Frances W. Russell, Clark & Stant, P.C., Virginia Beach, VA, argued, for petitioner-appellee. With him on the brief was Stephen C. Swain.
 William G. Cole, Atty., Dept. of Justice, Washington, DC, argued, for respondent-appellant. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen. and Barbara C. Biddle, Atty. Tarek Sawi, Dept. of Justice, Washington, DC, also represented respondent-appellant.
 Before ARCHER, Chief Judge*, NEWMAN and CLEVENGER, Circuit Judges.
 DECISION
 ARCHER, Chief Judge.
 
 
 1
 The Secretary of the Department of Health and Human Services (Secretary) appeals the judgment of the United States Claims Court[1] affirming the decision of the Special Master that in calculating lost earnings under the National Childhood Vaccine Injury Act of 1986, the Federal Insurance Contributions Act (FICA) tax is not an "appropriate tax" within the meaning of the statute to be deducted from the award. See 42 U.S.C. Sec. 300aa-15(a)(3)(B). We reverse and remand.
 
 DISCUSSION
 I.
 
 2
 Corey Euken contracted a residual seizure disorder after receiving diphtheria, pertussis, and tetanus (DPT) shots. The disorder caused a severe encephalopathy and resulted in Corey suffering developmental delays and mental disabilities. Corey's mother filed a petition on Corey's behalf for compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. Secs. 300aa-10 to 300aa-34 (1988 & Supp. IV 1992) (Vaccine Act). The petition alleged that Corey's injuries were suffered as a direct result of receiving the DPT shots.
 
 
 3
 The Vaccine Act established the National Vaccine Injury Compensation Program, 42 U.S.C. Secs. 300aa-10 to 300aa-17. Under the Program, individuals who claim to have either contracted or aggravated illnesses as a result of receiving certain vaccines, including DPT vaccines, can receive compensation from the government by filing a petition with the Court of Federal Claims. 42 U.S.C. Sec. 300aa-11(a)(1). After a petition for compensation is filed, a special master is assigned to the case to determine entitlement and, if appropriate, the amount of compensation. See 42 U.S.C. Sec. 300aa-12. Compensation is calculated and limited in amount by statute. See 42 U.S.C. Sec. 300aa-15. The decision of the special master may be reviewed upon motion to the Court of Federal Claims. 42 U.S.C. Sec. 300aa-12(e). If a petitioner is not satisfied with the judgment of the Court of Federal Claims, the decision may be appealed to this court. 42 U.S.C. Sec. 300aa-12(f).
 
 
 4
 In Corey's case, the government conceded the issue of entitlement and the case was referred to a special master for a determination of the amount of compensation. Following an evidentiary hearing, the special master awarded compensation, which included an award of lost earnings pursuant to 42 U.S.C. Sec. 300aa-15(a)(3)(B). That statute provides:
 
 
 5
 In the case of any person who has sustained a vaccine-related injury before attaining the age of 18 and whose earning capacity is or has been impaired by reason of such person's vaccine-related injury for which compensation is to be awarded and whose vaccine-related injury is of sufficient severity to permit reasonable anticipation that such person is likely to suffer impaired earning capacity at age 18 and beyond, compensation after attaining the age of 18 for loss of earnings determined on the basis of the average gross weekly earnings of workers in the private, non-farm sector, less appropriate taxes and the average cost of a health insurance policy, as determined by the Secretary.
 
 
 6
 42 U.S.C. Sec. 300aa-15(a)(3)(B). The special master determined that earnings of the average worker during a forty year estimated work life beginning in the year 2007 would total $28,715.58 per year after deducting an amount equal to the income tax that would be paid by such a worker. The special master did not deduct FICA tax from such earnings. She reasoned that FICA is not an "appropriate tax" within the meaning of the statute because "Corey will not, as a normally employed person would, receive the FICA deductions back once he attains the age of 65."
 
 
 7
 The Secretary petitioned the Claims Court for review of the decision of the special master on the ground, inter alia, that the special master erroneously failed to deduct FICA tax from the lost earnings award. The Claims Court affirmed the decision of the special master, stating that the arguments presented by the Secretary did not "compel a finding that FICA must be deducted from an award for lost earnings, even if it would be reasonable and acceptable to do so." The court concluded that "it appears to this Court that, based on the phrase 'appropriate taxes' in the statute and the special master's reasoning regarding what is an appropriate tax, this Court cannot say her determination was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law." The Secretary appeals.
 
 II.
 
 8
 The issue in this case is one of statutory interpretation: whether the term "appropriate taxes," as used in the Vaccine Act, includes FICA tax. This court reviews issues of statutory interpretation under the Vaccine Act under a "not in accordance with the law" standard, see Whitecotton v. Secretary of Department of Health and Human Services, 17 F.3d 374, 376 (Fed.Cir.1994). This is a de novo standard of review. Thus, this court need not accord any deference to the interpretation of the statute by the special master.
 
 
 9
 Section 300aa-15(a)(3)(B) provides, in pertinent part, for "compensation after attaining the age of 18 for loss of earnings determined on the basis of the average gross weekly earnings of workers in the private, non-farm sector less appropriate taxes " (emphasis added). The statute establishes an objective standard. The loss in earnings is not to be calculated on the basis of what each petitioner's future earnings might be; that speculative exercise would be impossible. Congress instead chose to base the award of lost earnings on what workers in the private sector are paid on average.
 
 
 10
 Correspondingly, since the statute provided for the deduction of "appropriate taxes" from the "average gross weekly earnings," it seems clear that Congress intended that the deducted taxes be "appropriate" to the objective standard of worker pay in the private sector, not to whether they might be "appropriate" to each petitioner. Thus, the proper inquiry under the statute in this case is whether a private sector worker would normally have FICA tax deducted from their average gross weekly earnings, not whether Corey would have to pay that tax or ever receive FICA benefits. We are therefore convinced that Congress chose to limit the award of loss of earnings to the "average" pay of workers in the private sector and intended that the "appropriate" taxes to be deducted from that amount would be the taxes normally paid by such workers.
 
 
 11
 Ms. Euken argues that interpreting "appropriate taxes" to include FICA tax conflicts with the language of both the Federal Insurance Contributions Act, 26 U.S.C. Secs. 3101-28, and the Vaccine Act. She contends that the amount of benefits receivable by an individual under the Social Security system depends upon the amount of that person's earnings subjected to FICA tax and the length of time spent working. Benefits are available only to those who have worked a specific period of time. Because of the injuries suffered as a result of his vaccination, Corey will never fulfill the statutory requirement. Therefore, Ms. Euken argues that FICA is not an appropriate tax within the meaning of the Vaccine Act because Corey could never receive the benefits for which he was taxed.
 
 
 12
 In addition, Ms. Euken argues that there are exceptions to the rule that FICA tax is deducted from the wages of workers. Where an alternative retirement system is available, according to Ms. Euken, under certain circumstances a worker can opt out of the Social Security system and FICA tax is no longer due. She contends this is essentially the case here because the Vaccine Injury Compensation Trust Fund will provide for Corey, not the Social Security system.
 
 
 13
 While we are sympathetic to the arguments of Ms. Euken, under a proper construction of the statute they are beside the point. The relevant question is whether workers in the private sector would normally have FICA taxes deducted from their average gross weekly earnings. While there may be narrow exceptions to the rule, it is beyond dispute that the vast majority of workers in the private sector pay FICA taxes from their gross earnings. See 26 U.S.C. Sec. 3101(a) and (b). Moreover, the Vaccine Act, by specifying an objective standard for determining the net amount of the loss of earnings to be awarded unrelated to what any petitioner might be expected to earn, precludes consideration of Corey's particular status. Under these circumstances, the argument that Corey would not receive any Social Security benefits is simply not pertinent to the question of whether FICA taxes are appropriate taxes to deduct from the average gross weekly earnings of a private sector worker. Because we determine that Ms. Euken's arguments, even if the premises underlying them are accepted as true, are not persuasive, we need not consider the Secretary's rebuttal to the contention that an individual such as Corey could opt out of the Social Security system.
 
 
 14
 Accordingly, we conclude that FICA tax, like federal and state income taxes, is an appropriate tax to deduct in determining a lost earnings award under the Vaccine Act. We reverse the decision of the Claims Court and remand this case for calculation of an award consistent with this opinion.
 
 
 15
 REVERSED and REMANDED.
 
 
 
 *
 Chief Judge Archer assumed the position of Chief Judge on March 18, 1994
 
 
 [1]
 No. 91-1059V (Cl.Ct. Sept. 8, 1992). The United States Claims Court was renamed the United States Court of Federal Claims on October 29, 1992. Federal Courts Administration Act of 1992, Pub.L. No. 102-572, Sec. 902(a), 106 Stat. 4506, 4516