CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellee and Cross-Appellant, v. McDOWELL AND COLANTONI, LTD., *et al.*, Defendants-Appellants and Cross-Appellees (Anthony M. Colantoni *et al.*, Defendants).

First District (2nd Division)   Nos. 1—94—3981, 1—94—3982, 1—94—3984 cons.

Opinion filed June 25, 1996.

Gessler, Hughes & Socol, Ltd. (William Jones and Laura Liu, of counsel), and Law Office of Terence Flynn (Terence Flynn, of counsel), both of Chicago, for appellants McDowell & Colantoni, Ltd., Boyd McDowell III, and Allen W. McDowell.

Carroll, Hartigan & McCauley, Ltd., of Chicago (J. Timothy Cerney and C. Richard Farmer, of counsel), for appellant Michael Inman.

Martin N. Preiser, of River Forest, appellant *pro se.*

Mora & Baugh, Ltd., of Chicago (Steven Mora, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Christine Watkins (Watkins) retained the law firm of McDowell & Colantoni, Ltd. (Law Firm), to represent her minor daughter, Cassidy Watkins (Cassidy), in pursuance of an injury claim. Anthony Colantoni (Colantoni), a Law Firm partner, admitted having improperly transferred funds from the Law Firm's clients' trust account belonging to Cassidy to the Law Firm's general operating account for expenses unrelated to Cassidy's case. Watkins learned of

these transfers and filed a complaint in Sarasota County, Florida, naming the Law Firm, an Illinois corporation, and Law Firm partners Colantoni, Allen McDowell, Boyd McDowell III, Michael Inman and Martin Preiser as individual defendants (sometimes collectively defendants).

Continental Casualty Co. (Continental) previously had issued a professional liability insurance policy (Policy) to the Law Firm with coverage relating to the instant action, but subsequently notified the Law Firm that it was denying coverage under the Policy. Continental commenced the instant declaratory action to have Watkins' action against the Law Firm excluded from coverage.

Following cross-motions for summary judgment, the circuit court ruled that the Policy's terms excluded Watkins' claims. On appeal, the issues presented include whether Watkins' suit to recover funds misappropriated by the Law Firm is excluded from coverage under the Policy's "dishonesty" provision; the Policy's "sole allegation" is ambiguous and, therefore, must be construed in favor of the insureds; Continental wrongfully withdrew its defense of the Law Firm in the underlying case; and Continental has a duty to defend the Law Firm and its partners in a pending related federal matter. The pleadings and summary judgment documents reveal the following circumstances.

In the underlying lawsuit, Watkins retained the Law Firm to represent Cassidy in a claim involving the federal vaccination program. From the time the Law Firm was formed, until late 1991, Colantoni managed its financial affairs exclusively and was principal and managing partner of the Law Firm. Only Colantoni handled the Watkins' case. Before the Watkins' disposition, the Law Firm began to experience financial shortfalls. Starting in February 1990, Colantoni, without knowledge of other Law Firm members, directed unauthorized transfers from the Law Firm's unsegregated clients' trust fund account into its general operating account. He intended to replenish the trust account as fees were received. Colantoni directed similar transfers nine times in other cases prior to receipt of Watkins' funds, and many more times thereafter, in excess of $1 million.

The misappropriated funds were generated by settlement of Watkins' personal injury claims in federal claims court. Following two evidentiary hearings in that case, a special master awarded Watkins $2,403,864.46, payable in four United States treasury checks of equal annual installments. Colantoni, as Watkins' attorney, received the first installment check of $600,966.12 in August of 1990 and had it placed in the Law Firm's clients' trust account. Subsequently, as in the nine previous instances mentioned, he directed the

transfer of the Watkins' funds to the Law Firm's overhead and bank loan accounts, as well as for some of his personal expenses.[1] The Law Firm's attorneys first learned of the improper transfers in October of 1991 and, on December 12, 1991, notified Continental that Watkins intended to file a lawsuit against the Law Firm, requesting Continental to provide a defense. Partial restoration of over $336,000 was made by the Law Firm to Watkins.

On January 22, 1992, Watkins filed a complaint on Cassidy's behalf in Sarasota County, Florida, naming the Law Firm and Colantoni, individually, as defendants. Her second amended complaint added the Law Firm's partners as individual defendants and contained seven counts. Count I alleged that the Law Firm was liable for breach of contract; count II asserted that the Law Firm and Colantoni breached their fiduciary duties to plaintiffs; count III was an action against the Law Firm for negligence in supervising the trust account; count IV was an action for accounting; count V sought injunctive relief; count VI claimed that Allen McDowell was negligent in maintaining the Law Firm's accounts and books; and count VII alleged vicarious liability against Allen McDowell, Boyd McDowell III, Michael Inman,[2] Martin Preiser and the Law Firm, based upon Illinois Supreme Court Rule 721(d) (134 Ill. 2d R. 721(d)).

The Florida trial court on March 25, 1993, entered a "summary final judgment" against the Law Firm, based upon Watkins' second amended complaint, concluding that the Law Firm breached its duty of care to Watkins by supervising its accounts negligently and awarded Watkins $446,997 plus prejudgment interest. In March of 1994, Watkins filed a petition for registration of the Florida judgment in the circuit court of Cook County.

The Law Firm initially was represented by counsel in Florida, selected by Continental, which thereafter informed defendants that it would cancel their 1991-92 policy, effective August 29, 1992. In November of 1992, Continental notified the Law Firm that it would no longer provide counsel for the defense in the Watkins' case, but agreed, under a reservation of rights, to reimburse the Law Firm for the fees of defense counsel.

Meanwhile, on May 21, 1992, Continental filed its initial com-

---

[1] In federal court, Colantoni pleaded guilty to two counts of mail fraud, admitting to misappropriating money that belonged to Watkins. He was disbarred by consent.

[2] This court entered an order on January 31, 1996, granting Michael Inman's motion to dismiss his appeal (No. 1—94—3983) with prejudice pursuant to a stipulation between the parties.

plaint in the circuit court of Cook County, seeking declaratory relief for rescission of its Policy. Subsequent amended complaints abandoned rescission and essentially claimed noncoverage for the Watkins' matter and exclusion for "dishonesty" as provided in the Policy. These two theories remained in Continental's last pleading, its fourth amended complaint, filed November 19, 1993, seeking a judicial declaration that the Policy excluded the claims related to the Watkins' litigation. Various defendants eventually answered these complaints.[3]

As previously noted, both parties filed cross-motions for summary judgment. The Law Firm's motion, filed August 3, 1994, was supported by 10 exhibits and 2 partners' affidavits. The motion asserted that the partners were unaware of Colantoni's improper transfers of clients' trust funds and that Colantoni was the only attorney working on the Watkins' file. The motion contended that the dishonesty exclusion of the Policy invoked by Continental clashed directly with other Policy provisions, setting them forth. Continental's motion, filed August 12, 1994, asserted that all claims articulated in the Watkins' lawsuit against the Law Firm arose from the dishonest act of Colantoni and, therefore, were excluded from coverage under the Policy's dishonesty exclusion.

At the hearing on these cross-motions for summary judgment, the circuit court found that Colantoni's dishonest acts were the predominant cause of the action which gave rise to Watkins' Florida lawsuit, held that the dishonesty exclusion of the Policy operated to bar coverage, and ruled that Continental did not have a duty to defend or indemnify the Law Firm or its individual partners. The court declined to extend its ruling to Watkins' pending federal action. Both parties appeal.

I

Defendants contend that they were entitled to summary judgment as a matter of law because the Policy provides coverage arising from claims for failure to render professional service, which included their negligence in failing to supervise their clients' trust account, with which they were charged and found guilty in Watkins' Florida lawsuit. Continental asserts that Watkins' lawsuit is excluded from coverage under the Policy's dishonesty exclusion and summary judgment, therefore, was properly granted.

---

[3]On October 20, 1993, Watkins filed a federal diversity lawsuit in the United States District Court for the Northern District of Illinois naming Allen M. McDowell, Boyd McDowell III, Michael Inman and Martin Preiser as defendants. The federal complaint contained three counts alleging negligence and breach of fiduciary duties.

The interpretation of the terms contained in an insurance policy is a question of law for the court and is appropriate in a summary judgment proceeding. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073 (1993). Summary judgment orders are reviewed *de novo. Demos v. National Bank of Greece*, 209 Ill. App. 3d 655, 659, 567 N.E.2d 1083 (1991).

Insurance contracts are subject to the same rules of construction as other types of contracts. *Dunlap v. Illinois Founders Insurance Co.*, 250 Ill. App. 3d 563, 568, 621 N.E.2d 102 (1993). In construing a contract, the primary objective is to effectuate the intent of the parties. *Dunlap*, 250 Ill. App. 3d at 568. "Intent may be ascertained from the circumstances surrounding the issuance of the policy, including the situation of the parties and the purpose for which the policy was obtained." *Dash Messenger Service, Inc. v. Hartford Insurance Co.*, 221 Ill. App. 3d 1007, 1010, 582 N.E.2d 1257 (1991). All the provisions of the insurance contract must be read in light of each other to determine whether an ambiguity exists. Dash *Messenger Service, Inc.*, 221 Ill. App. 3d at 1010. Ambiguities will be construed against the drafter of the policy and in favor of coverage. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 121-22, 607 N.E.2d 1204 (1992).

■ In particular, an exclusionary clause relied upon to deny coverage must be clear and free from doubt. *Economy Fire & Casualty Co. v. Bassett*, 170 Ill. App. 3d 765, 769, 525 N.E.2d 539 (1988). The insurer bears the burden of showing that a claim falls within an exclusion. *Bassett*, 170 Ill. App. 3d at 769. Provisions that limit or exclude coverage are to be construed liberally in favor of the insured and " 'most strongly against the insurer.' " *National Union Fire Insurance Co. v. Glenview Park District*, 158 Ill. 2d 116, 122, 632 N.E.2d 1039 (1994), quoting *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 179, 370 N.E.2d 1044 (1977).

■ An insurer may not refuse justifiably to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. *Conway v. Country Casualty Insurance Co.*, 92 Ill. 2d 388, 393, 442 N.E.2d 245 (1982). The duty to defend arises even if only one of the theories of recovery is within the potential coverage of the policy. *Shell Oil Co. v. AC&S, Inc.*, 271 Ill. App. 3d 898, 904, 649 N.E.2d 946 (1995).

Defendants initially argue that the Policy provides coverage for negligent acts of the insureds and that the underlying complaint contains allegations which fall within the "professional services" coverage provision. Continental counters that the Law Firm's

negligence arose out of Colantoni's theft and, therefore, the Policy's dishonesty exclusion applies.

Watkins' second amended Florida complaint alleged that an attorney-client relationship existed and the Law Firm breached its duty of care "by failing to exercise reasonable diligence in the supervision of its trust account and by failing to discover the unauthorized and improper deposits made by Colantoni." The Florida trial court ruled that the Law Firm was liable to Watkins on counts I (breach of contract) and II (breach of fiduciary duty). The court held that the Law Firm breached its duty of care "by negligently supervising *** [its] trust account so as to prevent and discover the unauthorized handling" of money by Colantoni.

■ Attorneys are required by Illinois Rule of Professional Conduct 1.15 to hold clients' funds segregated and deposited in interest-bearing trust accounts. 134 Ill. 2d R. 1.15. Defendants assert that under Supreme Court Rule 721(d), an integral part of an attorney's professional services is the maintenance of such trust accounts. 134 Ill. 2d R. 721(d). According to defendants, Watkins could not recover without proof that the loss of the pertinent trust money arose in relation to the negligent performance of professional legal services. Continental does not dispute that the Policy provides coverage for negligent acts[4] but contends the current case comes within the Policy's dishonesty exclusion.

The dishonesty exclusion provides:

> "We will not defend or pay, under this Coverage Part for:
>
> * * *
>
> D. any claim arising out of:
>
> * * *
>
> any dishonest, fraudulent, criminal or malicious act or omission by you or any of your partners, officers, stockholders or employees. This exclusion does not apply to an act or omission which is the basis of a malicious prosecution claim."

A claim under the Policy "means the receipt of a demand for money or services, naming you and alleging a wrongful act." A "wrongful act" is defined as "any negligent act, error or omission in: *** the rendering of or failure to render, professional services," the latter of which is defined as "services rendered *** as a lawyer," including acts as trustee, or fiduciary activity.

---

[4]Michael Karson, Continental's vice-president of claims, stated in his deposition that the negligent supervision of a client trust fund account would fall within the definition of a wrongful act under the Policy, taken by itself.

Undisputably, defendants were sued by Watkins for professional negligence. Continental contends, however, that the dishonesty exclusion operates to exclude all claims which arise from the dishonest act, relying upon *Allstate Insurance Co. v. Pruitt*, 177 Ill. App. 3d 407, 532 N.E.2d 401 (1988) *(Pruitt)*, and *Transamerica Insurance Co. v. South*, 975 F.2d 321 (7th Cir. 1992) *(Transamerica)*. In order to understand *Pruitt*, the case of *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 46, 47, 504 N.E.2d 123 (1987) *(USF&G)*, relied upon by defendants, first must be analyzed.

In *USF&G*, a young child was injured when she fell out of a station wagon owned and operated by a day care center that she attended. The underlying lawsuit alleged that the day care center was negligent in: (1) operating and maintaining the station wagon and (2) supervising the child. 152 Ill. App. 3d at 47. The insurance policy excluded claims " 'arising out of the ownership, maintenance, operation [or] use of (1) any automobile *** owned or operated by *** any insured, or (2) any other automobile *** operated by any person in the course of his employment by an insured.' " (Omissions in original.) 152 Ill. App. 3d at 48. The court in *USF&G* held that the policy did not deny coverage because the negligent supervision claim was based upon conduct by the day care center independent from the use of the automobile. 152 Ill. App. 3d at 48-49. The *USF&G* court discussed causation, in part, as follows:

> "If a proximate cause of an injury is within the included coverage of an insurance policy, the *included coverage is not voided merely because an additional proximate cause of the injury is a cause which is excluded under the policy*. Thus, in order for an injury to be excluded from coverage under an insurance policy, the injury must have been caused *solely* by a proximate cause which is excluded under the policy. The insurance carrier has the burden of proof as to whether the injury was caused solely by a proximate cause which is excluded under the policy." (Emphasis added.) 152 Ill. App. 3d at 48-49.

Although this principle was thought to have been limited in *Pruitt* to "cases in which the two causes of injury are *wholly independent* of one another" (emphasis added) *(Transamerica*, 975 F.2d at 330), nothing in the facts, the policy there reported, or in the *Pruitt* opinion itself, makes such an overarching statement. As did the court in *Insurance Co. of North America v. Krigos*, 196 Ill. App. 3d 200, 205, 553 N.E.2d 708 (1990), we read the *Pruitt* decision as having been based on allegations that the injury there arose *solely* from a cause specifically excluded by the policy there at issue. That situation does not

exist in the case *sub judice*, which does not seek recovery for Colantoni's criminal acts, which would be excluded, but for the Law Firm's negligent omissions, which are not excluded. The ruling in *Transamerica Insurance Co. v. South*, 975 F.2d 321, 322 (7th Cir. 1992) (*Transamerica*), is of very limited precedential value, since, as the concurring opinion in *Transamerica* correctly noted, Illinois courts may not adhere to *Transamerica* in the face of the Illinois rule of *contra preferentem* (strict construction against the drafter of the policy). 975 F.2d at 332.

In construing the Policy here, the threshold question is whether the Watkins' claims fall within its terms. As the supreme court in *Dixon Distributing Co. v. Hanover Insurance Co.* expostulated, "[a]n insurer's duty to defend arises if the complaint alleges facts that fall within, or potentially within, the policy's coverage." *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill. 2d 433, 438-39, 641 N.E.2d 395 (1994), citing *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991). The facts alleged in Watkins' actions clearly fell within the Policy's coverage.

■ Continental nevertheless asserts that this case is governed by *Pruitt* and *Transamerica* because there could be no loss unless the excluded dishonest event occurred, and that causation should play a fundamental role in determining the applicability of exclusions. Defendants argue that the underlying complaint did not allege the same facts against Colantoni as it did against the Law Firm; the dishonesty exclusion does not apply because the Policy provides coverage for negligent acts; and not only did the underlying complaint allege negligence, but the Florida trial court's judgment was based wholly upon the negligence of the Law Firm. We agree. "But for" causation, not necessarily proximate causation, demonstrates that the Law Firm's negligence in supervising clients' trust accounts began some time before the Watkins' matter and was not dependent upon Colantoni's misappropriation of the funds; to the contrary, the dishonest act and Watkins' injury would not have occurred if the Law Firm had supervised the accounts properly before the Watkins' check was ever received and deposited. See *Hermitage Insurance Co. v. Dahms*, 842 F. Supp. 319, 325 (N.D. Ill. 1994); *Maryland Casualty Co. v. Chicago & North Western Transportation Co.*, 126 Ill. App. 3d 150, 154, 466 N.E.2d 1091 (1984). Defendants' negligence, therefore, was independent of Colantoni's misappropriation. The negligent supervision of its clients' trust fund clearly falls within Continental's coverage for wrongful acts in the Law Firm's rendering or failure to render professional services.

In any event, the causal analysis, for which Continental contends,

is only part of the equation; in determining whether an exclusion applies, a court must regard "the rules of contract construction, and not tort principles." See *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 725, 648 N.E.2d 1099 (1995). Provisions that limit or exclude coverage are to be construed liberally in favor of the insured and " 'most strongly against the insurer.' " *National Union Fire Insurance Co. v. Glenview Park District*, 158 Ill. 2d 116, 122, 632 N.E.2d 1039 (1994), quoting *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 179, 370 N.E.2d 1044 (1977).

The Watkins' complaint alleged negligent supervision by defendants over the clients' trust fund; the Florida court so determined upon trial; the pending federal suit here so alleges. The circuit court's grant of summary judgment to Continental to the contrary is in error and must be reversed.

## II

■ Defendants maintain that the Policy contains other conflicting and ambiguous language which requires that it be read to provide coverage for all defendants, including the Law Firm, with respect to Watkins' lawsuit.

Among the Policy's other provisions is the following:
> "II. EXCLUSIONS
> We will not defend or pay, under this Coverage Part for:
>
> \* \* \*
>
> I. any claim whose *sole allegation* is that of a willful violation of a statute, ordinance or regulation which imposes criminal penalties." (Emphasis added.)

Defendants assert that the "sole allegation" provision of paragraph I must be read together with the "dishonesty" exclusion in paragraph D and, when so read, the Policy demonstrates coverage for the Watkins' claim because there is no allegation of criminal acts on the Law Firm's part, or by individual defendants, but only negligent supervision of the clients' trust account. They argue that any reasonable reading of the "sole allegation" exclusion demonstrates that if a plaintiff makes any claim based on one or more allegations which are not excluded by the "dishonesty exclusion," there is coverage under the Policy for these nonexcluded allegations. Since the Watkins' underlying state and federal complaints claim recovery for nonexcluded acts and omissions such as "negligent supervision," defendants assert, the underlying Watkins' Florida complaint has nothing to do with recoveries based on criminal wrongdoing, as related to any insureds other than Colantoni.

The Florida court, in paragraph 13 of the amended summary judgment as to the Law Firm, made the following finding for Watkins and against the Law Firm:

"13. Based upon the foregoing undisputed facts, *** [Law Firm] breached its duty of care to Plaintiff, Watkins, by negligently supervising *** [Law Firm's] trust account so as to prevent and discover the unauthorized handling of the two judgment installment payments by Colantoni and as direct and proximate result of said negligence, Plaintiff Watkins has been damaged. Accordingly, *** [Law Firm] is liable to Plaintiffs as to Count III (Negligence) of the Second Amended Complaint."

The "sole allegation" exclusion, when read in conjunction with the "dishonesty exclusion," demonstrates expanded coverage or, at minimum, reveals an ambiguity, which must be decided against Continental and in favor of defendants. As the supreme court expostulated in *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74, 578 N.E.2d 926 (1991), "[a] provision is ambiguous if it is subject to more than one reasonable interpretation. [Citation.] All doubts and ambiguities must be resolved in favor of the insured. [Citation.]" That is the present situation.

Aside from the "sole allegation" exclusion in the Policy, Illinois law clearly establishes that, if alternative theories are alleged by a plaintiff, nevertheless there is coverage by reason of the nonexcluded allegations. *National Union Fire Insurance Co. v. Glenview Park District*, 230 Ill. App. 3d 578, 594 N.E.2d 1300 (1992), *aff'd in part, modified in part*, 158 Ill. 2d 116, 632 N.E.2d 1039 (1994) (*National Union*); *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 46, 504 N.E.2d 123 (1987); *United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.*, 107 Ill. App. 3d 190, 437 N.E.2d 663 (1982). In *National Union*, the supreme court reiterated the rule that exclusionary provisions will be applied only where their terms are clear, definite and explicit. 158 Ill. 2d at 123. These are the circumstances in the present case, and the meaning must be construed favorably to the insureds. *National Union*, 158 Ill. 2d at 122; *American Standard Insurance Co. v. Allstate Insurance Co.*, 210 Ill. App. 3d 443, 448, 569 N.E.2d 162 (1992). Doing so here required a finding of coverage; the circuit court's conclusion to the contrary must be reversed.

## III

■ Defendants maintain that Continental wrongfully withdrew its defense of the Law Firm in the underlying case and that Continental must indemnify the Law Firm for that judgment.

Continental submits that defendants did not raise this issue in the trial court and, therefore, cannot raise it on appeal.

The motions for summary judgment alleged that the Policy provided coverage for the underlying lawsuit and that Continental had a duty to defend. Accordingly, defendants have not waived this issue on appeal. *In re Marriage of Kerman*, 253 Ill. App. 3d 492, 502, 624 N.E.2d 870 (1993).

The analyses contained in points I and II of this opinion demonstrate that Continental had a duty to defend because the Policy did not exclude coverage for Watkins' claims of negligence. Continental wrongfully withdrew its defense of the Law Firm in the Florida trial court and was required to provide counsel for the defense in the Watkins' cases. Continental already has agreed, under a reservation of rights, to reimburse the Law Firm for the fees of defense counsel; additionally, it must indemnify the Law Firm for the Watkins' judgment.

## IV

■ Both parties agree that the circuit court's judgment in this declaratory judgment action should apply to the pending federal lawsuit, contrary to the court's order.

Section 2—701 of the Code of Civil Procedure provides that a court "may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments." 735 ILCS 5/2—701 (West 1994). A declaratory judgment may be sought as an incident to a pending related underlying suit (see *Illinois Founders Insurance Co. v. Guidish*, 248 Ill. App. 3d 116, 119, 618 N.E.2d 436 (1993)), including a pending federal lawsuit (see *Gibraltar Casualty Co. v. Sargent & Lundy*, 214 Ill. App. 3d 768, 574 N.E.2d 664 (1990)). The circuit court erred in refusing to require Continental to provide a defense to defendants in the pending federal lawsuit.

By virtue of this decision, we need not consider other issues raised by the parties.

From the foregoing discussion, the terms of the Policy covered the Watkins' claims and the circuit court's determination to the contrary must be reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SCARIANO and DiVITO, JJ., concur.