**Jana HESTON, By and Through her natural mother and guardian/conservator, Darcy C. HESTON, Petitioner,**

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 90–3318V.**

United States Court of Federal Claims.

May 26, 1998.

William P. Ronan, Overland Park, Kansas, for petitioner.

Mark W. Rogers, with whom were Frank W. Hunger, Assistant Attorney General, Helene M. Goldberg, Director, John Lodge Euler, Deputy Director, and Gerard W. Fischer, Assistant Director, Washington, D.C., for respondent.

*OPINION*

ANDEWELT, Judge.

I.

This action, brought pursuant to the National Childhood Vaccine Injury Act of 1986, as amended, 42 U.S.C. §§ 300aa–1 to –34 (the Vaccine Act), presents an issue of first impression. This court must determine whether special masters have the authority to award compensable attorneys' fees and related costs incurred in the prosecution of a Vaccine Act petition directly to counsel rather than to the petitioner. Herein, the special master assigned to consider the petition pursuant to Section 12(d) of the Vaccine Act carefully reviewed this issue and ultimately determined that he possessed the discretion to make such a direct award to counsel. Respondent filed a timely motion pursuant to Section 12(e)(1) of the Vaccine Act seeking review of the special master's October 3, 1997, decision. Respondent contends that the pertinent statutory provisions of the Vaccine Act obligate the special master to award any attorneys' fees and related costs directly to the petitioner. The court compliments the special master on a careful, comprehensive, and well written opinion. For the reasons set forth below, however, the court simply disagrees with the special master's interpretation of the statute and concludes that the

Vaccine Act requires special masters to award attorneys' fees and related costs directly to the petitioner.

## II.

Darcy Heston, mother and guardian of Jana Heston, hired an attorney, William Ronan, to file a petition under the Vaccine Act seeking compensation for injuries Jana allegedly suffered as the result of a diphtheria-pertussis-tetanus (DPT) vaccination administered on May 18, 1967. After Ronan drafted and filed the petition, Darcy Heston, for reasons not apparent from the record, ceased cooperating with Ronan. The special master ultimately dismissed the action for failure to prosecute and explained that "Mr. Ronan was in a position where he could obtain from the petitioner neither her authority to voluntarily dismiss the case, nor her cooperation in attempting to prove the claim. He therefore had no other viable option but to stand by as I dismissed the case." *Heston v. Secretary, HHS*, No. 90–3318V, 1997 WL 702561, at *2 (Fed.Cl. Oct. 3, 1997).

As described below, Section 15(e)(1) of the Vaccine Act authorizes the special master to award reasonable attorneys' fees and other costs incurred in prosecuting a petition under the Vaccine Act even in instances where the special master denies all other forms of compensation, so long as the special master finds that the petitioner had a reasonable basis for the claim and brought the claim in good faith. After dismissal of the instant petition, based on Section 15(e)(1), Ronan sought to recover fees and certain other costs he had incurred in the prosecution of the petition. The special master concluded that Ronan had presented sufficient evidence to support an award of attorneys' fees and costs totaling $7,206.17.

Respondent concedes that the special master could have, consistent with common practice, issued a check covering attorneys' fees and related costs in the names of both petitioner and Ronan, thus giving Ronan some level of control over the funds. The special master, however, concluded that such an approach unlikely would result in Ronan ever receiving the funds due him. The special master reasoned that given petitioner's un-willingness to cooperate and communicate with Ronan, it was "extremely unlikely that if a check for attorneys' fees and costs were made out jointly to the petitioner and a check for attorneys' fees and costs were made out jointly to the petitioner and Mr. Ronan, the petitioner would in fact endorse it so that Mr. Ronan could collect his rightful compensation and reimbursement for costs expended." *Id.* at *4. This conclusion led the special master to consider whether he had the authority to compensate Ronan directly. Based on a detailed analysis of the language of the Vaccine Act and of case law under other statutes providing for the recovery of attorneys' fees, the special master concluded that although the issue was close, he had the required discretion to award directly to Ronan attorneys' fees and other costs totaling $7,206.17.

## III.

The special master's interpretation of the statute involving the scope of his authority is an issue of law and pursuant to Section 12(e) of the Vaccine Act, this court reviews determinations of issues of law on a *de novo* basis. *See Euken by Euken v. Secretary, HHS*, 34 F.3d 1045, 1047 (Fed.Cir.1994). In *Patton v. Secretary, HHS*, 25 F.3d 1021, 1027 (Fed.Cir. 1994) (citations omitted), the Court of Appeals for the Federal Circuit explained the scope of a special master's authority under the Vaccine Act as follows: "[T]he Office of Special Masters owes its existence to and derives its powers from the Vaccine Act. As a 'creature of statute ... [a]ny and all authority pursuant to which [a special master] may act ultimately must be grounded in an express grant from Congress.'" Hence, in determining whether the special master acted within his discretion when he awarded the fees and costs directly to Ronan, this court must resolve whether any provision in the Vaccine Act reasonably can be interpreted to grant special masters the disputed authority to award such fees and costs directly to counsel.

The relevant statutory provisions are contained in Sections 11 and 15 of the Vaccine Act. Section 11(a) provides that "[a] proceeding for compensation under the [Vaccine Act] for a vaccine-related injury or death shall be

initiated by service upon the Secretary and the filing of a petition ... with the United States Court of Federal Claims." Section 11(c) goes on to define the required contents of such a petition. Section 15 specifies the amount of compensation available to a petitioner on a petition brought under Section 11. Section 15(a) states the general rule for compensation under the Vaccine Act and Section 15(b), which applies here, governs compensation for injuries resulting from vaccines administered before the effective date of the Vaccine Act. Both Sections 15(a) and (b) begin with the phrase "[c]ompensation awarded under the [Vaccine Act] *to a petitioner* under Section 300aa–11 ..." (emphasis added). Section 15(a) then lists, without specifically mentioning attorneys' fees and related costs, those expenses and items for which compensation is available. Section 15(b) lists some of the items for which compensation is available under Section 15(a) but specifically includes as part of the available compensation reasonable attorneys' fees and costs. Section 15(b) provides:

> Compensation ... may also include an amount, not to exceed a combined total of $30,000, for—
>
> (1) lost earnings ...,
>
> (2) pain and suffering ..., and
>
> (3) reasonable attorneys' fees and costs (as provided in subsection (e) of this section).

Section 15(e) in turn provides for the payment of attorneys' fees and costs as follows:

> **Attorneys' fees**
>
> (1) In awarding compensation on a petition filed under section 300aa–11 of this title the special master or court shall also award as part of such compensation an amount to cover—
>
> (A) reasonable attorneys' fees, and
>
> (B) other costs,
>
> incurred in any proceeding on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition

if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

## IV.

Together, Sections 15(a) and (b) are unambiguous in providing that compensation shall be awarded "to a petitioner." Because a petitioner and a petitioner's counsel are distinct entities, Sections 15(a) and (b) literally authorize payment directly to a petitioner only and not to his or her counsel. The Court of Appeals for the Federal Circuit, whose precedent is binding on this court, has so interpreted analogous statutory provisions concerning the payment of attorneys' fees. In *FDL Technologies, Inc. v. United States,* 967 F.2d 1578 (Fed.Cir.1992), the court interpreted the following attorneys' fees provision found in the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504(a)(1):

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and expenses incurred by that party in connection with that proceeding. ...

The court concluded that the statutory language obliged direct payment of attorneys' fees thereunder to the prevailing party rather than to the prevailing party's counsel. The court reasoned as follows:

> By its terms, § 504(a)(1) states that the fee award is made to a prevailing party, not the prevailing party's attorney. Furthermore, the statute applies to fees incurred by that party. Thus, under the language of the statute, the prevailing party, and not its attorney, is entitled to receive the fee award.

*FDL,* 967 F.2d at 1580. Similarly, in the instant case, the "to a petitioner" language in Sections 15(a) and (b) would require that the petitioner receive the fee award. As to the concern that such an award likely would result in counsel not receiving the funds due him or her, the *FDL* court concluded that the possibility that counsel may not receive the fees due him or her cannot overcome the statute's express mandate that such fees be paid directly to the prevailing party. *Id.* at 1580–81.

In reaching such a conclusion, the *FDL* court relied, *inter alia*, on *Phillips v. GSA*, 924 F.2d 1577, 1582 (Fed.Cir.1991). The EAJA provision at issue in *Phillips* provided that "a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party." 28 U.S.C. § 2412(d)(1)(A). The *Phillips* court, relying on the phrase "to a prevailing party," envisioned a two-step process whereby the plaintiff would receive the award of attorneys' fees and then turn over to her attorney the amount due him. The court noted that by entering an appropriate fee agreement with his client, counsel guaranteed that he would receive any attorneys' fees paid to his client. The court explained:

> As the statute requires, any fee award is made to the "prevailing party," not the attorney. Thus, Phillips' attorney could not directly claim or be entitled to the award. It had to be requested on behalf of the party. With this predicate, we construe the fee arrangement between Phillips and her attorney to mean that if an award of attorney fees is obtained on her behalf she is obligated to turn it over to her attorney.

*Id.*

## V.

Herein, the special master does not, consistent with this precedent, rely upon the "to a petitioner" language of Section 15(b) to support a direct award to counsel but rather looks to Section 15(e). Based upon the absence of the phrase "to a petitioner" in Section 15(e), the special master interpreted that section as being broad enough to authorize a direct payment to counsel. In order to resolve the resulting conflict between Section 15(b), which mandates a direct award "to a petitioner," and Section 15(e), which does not, the special master labeled Section 15(b) as a "general" provision and Section 15(e) as a "specific" provision governing attorneys' fees. The special master explained:

> [I]n this controversy concerning an award of attorneys' fees and costs, a strong argument can be made that the *specific* statutory attorneys' fees provision of 300aa–15(e)(1) would seem to take precedence over the *general* compensation provision of

§ 300aa–15(b). *See, e.g., Morales v. Trans World Airlines*, 504 U.S. 374, 385, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987)) ("[i]t is a commonplace of statutory construction that the specific governs the general").

*Heston*, 1997 WL 702561, at *5.

The court respectfully concludes that the special master resorted to an inapt canon of statutory construction. In both *Morales* and *Crawford Fitting* the courts were faced with a provision, the specificity of which conflicted with a more broadly worded provision. In each case, in order to harmonize the two apparently inconsistent mandates, the court resorted to the pertinent rule of statutory construction that the specific governs the general. Herein, to the extent the labels of specific and general are assigned to the two provisions at issue, Section 15(b), in pertinent part, would be characterized as specific because it contains the specific mandate that compensation be paid "to a petitioner" and Section 15(e), at least when viewed in isolation, would be characterized as general because it does not specify to whom compensation is to be awarded. Hence, even if the court were to apply the specific governs the general rule to these two statutory provisions, the special master's position would not stand.

More fundamentally, however, *Morales* and *Crawford* and the canon of statutory interpretation on which they rely are not applicable herein because there is no inherent conflict between the two statutory provisions involved. Section 15(b) covers "Vaccines administered before [the] effective date [of the Vaccine Act]," and because the instant petition involves such a pre-Act vaccination, the compensation analysis herein must begin with Section 15(b). Section 15(b) unambiguously provides that compensation shall be awarded "to a petitioner" and that such compensation "may include" several distinct parts, including a total of up to $30,000 for attorneys' fees and costs, lost earnings, and pain and suffering. As to attorneys' fees, Section 15(b) notes that reasonable attor-

neys' fees and costs shall be awarded "as provided in subsection (e)." Hence, Section 15(b) incorporates Section 15(e) and relies upon that section to provide certain details relating to the implementation of the attorneys' fees reference in Section 15(b). For example, Section 15(e) explains that attorneys' fees are available even where, as here, the special master refused to award any other compensation. Given this relationship between Sections 15(b) and (e), the absence in Section 15(e) of the phrase "to a petitioner" does not create an alternative to the mandate in Section 15(b) that compensation be awarded to the petitioner. Rather, because Section 15(e), in pertinent part, implements Section 15(b), which requires compensation "to a petitioner," a restatement of that requirement in Section 15(e) would not be necessary and indeed would be redundant.

Section 15(e) does not suggest an intent to carve out an exception to Section 15(b)'s mandate that payments be made "to a petitioner" but instead is fully consistent with the compensation scheme created in Section 15(b). As described above, Section 15(b) envisions compensation as a unitary award "to a petitioner," an award that is potentially made up of several distinct parts, one of which is reasonable attorneys' fees and costs.[1] Section 15(e) maintains this focus on attorneys' fees and costs constituting one element of a unitary award by classifying attorneys' fees and other costs as "part of" an award of compensation on a petition filed under the Vaccine Act.

In sum, the instant action does not involve two provisions, one general and one specific, that mandate inconsistent results that would require the court to resort to the statutory interpretation tool of the specific governs the general. Instead, the first statutory provision (Section 15(b)) incorporates the second provision (Section 15(e)), which is therefore subject to all of the limitations of the first.

So interpreted, the two provisions do not conflict but are entirely consistent. In this setting, the more pertinent rule of statutory interpretation is articulated in *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955), which provides as follows: "It is our duty 'to give effect, if possible, to every clause and word of a statute,' *Montclair v. Ramsdell*, 107 U.S. 147, 152 [2 S.Ct. 391, 27 L.Ed. 431] (1883), rather than to emasculate an entire section...." The court must reject the special master's proposed interpretation herein because that interpretation would emasculate the requirement in Section 15(b) that compensation, which includes attorneys' fees, be awarded "to a petitioner."

## VI.

Next, the special master's comprehensive discussion of related case law does not support a different result. It is true that, unlike the Federal Circuit in *FDL* and *Phillips*, some courts have interpreted statutory provisions involving attorneys' fees similar to those involved here as allowing the court the discretion in certain circumstances to make awards directly to counsel. *See, e.g., Turner v. Secretary, Air Force*, 944 F.2d 804, 808 n. 4 (11th Cir.1991) (explaining that there are circumstances in which attorneys may be paid directly because "any other method of disbursing attorneys' fees would be impractical."); *Richardson v. Penfold*, 900 F.2d 116, 117 (7th Cir.1990) ("Technically, the award of attorneys' fees under [42 U.S.C. § 1988] is to the party, not to his lawyer, but it is common to make the award directly to the lawyer where, as in this case, the lawyer's contractual entitlement is uncontested.").

For the proposition that the Federal Circuit sanctions awards of attorneys' fees directly to counsel, the special master points to *Jensen v. Department of Transportation*, 858

---

1. Although compensation is a unitary award, portions of that award may be paid at different times. *See* § 300aa–15(f)(4)(B). In *Saunders v. Secretary, HHS*, 25 F.3d 1031, 1035 (Fed.Cir. 1994), the Federal Circuit emphasized the distinct elements of compensation and referred to the payment of compensation for vaccine-related injuries as the primary focus and the payment of compensation for attorneys' fees as a secondary focus. This distinction, however, does not affect the entity to whom these two forms of compensation must be directed. Supporting a conclusion that attorneys' fees are paid and are a part of a single award to the petitioner, the *Saunders* court mentioned "the award of attorneys' fees and costs both *to prevailing and non-prevailing claimants*." *Id.* at 1036 (emphasis added).

F.2d 721 (Fed.Cir.1988), in which the court allowed a direct payment to counsel where the Civil Service Reform Act provision at issue provided that "the Board ... may require payment by the agency involved of reasonable attorney fees incurred by an employee ... if the employee ... is the prevailing party...." 5 U.S.C. § 7701(g)(1). This provision, however, lacks the unambiguous "to a prevailing party" language contained in the provisions involved in *FDL* and *Phillips*, which is analogous to the "to a petitioner" language contained in the instant Vaccine Act provisions. *FDL* and *Phillips* are applicable precedent and the court is obliged to follow their dictates. Indeed, in *FDL*, the court rejected a vigorous dissent when it adopted its approach that an express statutory mandate that attorneys' fees be paid directly to the prevailing party controls notwithstanding the possibility that counsel would never receive the funds due him. The equity based dissent rejected the conclusion that the permissibility of direct payment turns on slight nuances of wording and instead proposed allowing direct awards to attorneys "when the circumstances showed that to do otherwise would or could defeat payment to the attorney." *FDL*, 967 F.2d at 1583 (Newman, J., dissenting).

The special master finds further support for his approach in the Federal Circuit's decision in *Beck by Beck v. Secretary, HHS*, 924 F.2d 1029, 1034 (Fed.Cir.1991), in which the court explained:

> [T]he $30,000 cap on attorneys' fees in [Section 15(b)] limits all awards of compensation to attorneys for litigation under the Vaccine Act ... and that [Section 15(e)(3)] prohibits an attorney from charging or attempting to collect from his client any fees and costs in excess of this statutory cap.

The special master interprets this quotation as meaning that Section 15(e)(3) shifts the duty of compensating petitioners' attorneys from the petitioners to the court itself, and given this shift, the special master rhetorical-ly asks "why should the special masters and judges not have the discretion to order payment directly to such counsel?" *Heston*, 1997 WL 702561, at *13. The simple answer to the special master's question, of course, is that Congress, and not the special masters or the courts, is responsible for balancing the potentially conflicting policy considerations and setting the boundaries of the special master's discretion in granting awards. Congress' ultimate determination, as reflected in Section 15(b), is that the special master should direct compensation, including attorneys' fees, "to a petitioner." The special master and the court need not look beyond that clear dictate from Congress into Congress' possible rationale for this determination.

In any event, there are policy considerations that potentially would favor a congressional requirement that compensation for attorneys' fees be paid directly to the petitioner. Our civil court system provides a forum within which individuals can enforce their legal rights. The system therefore exists for the benefit of these individuals, not for the benefit of their attorneys. A rule that would allow direct payment to counsel rather than to the individual instituting suit potentially could compromise the interests of the client for the benefit of the attorney. For example, a direct award of attorneys' fees to counsel could provide a windfall to the attorney if the petitioner already had compensated his or her attorney in anticipation of a refund payment under Sections 15(b) and (e). It is the experience of this court that petitioners under the Vaccine Act often are unfamiliar with litigation and have little experience with attorneys. In this setting, requiring direct payments to petitioners obliges counsel to secure their fees from their clients, and thus tends to increase the petitioners' level of control over payments that may properly be theirs.[2]

This level of control also would benefit the petitioner in the event the combination of lost earnings, pain and suffering, and reasonable attorneys' fees exceed the $30,000 total cap

---

**2.** Although attorney misuse of client funds is rare, it is a problem that has occurred, *see Continental Cas. Co. v. McDowell and Colantoni, Ltd.*, 282 Ill.App.3d 236, 217 Ill.Dec. 874, 668 N.E.2d 59 (1996), and a problem that Congress reasonably would have addressed when drafting the Vaccine Act.

on such combined payments in Section 15(b). The $30,000 cap causes the financial interests of the attorney to diverge from those of his or her client. It is in the petitioner's financial interest to maximize the portion of the $30,000 allotted to lost earnings and pain and suffering while it is in counsel's financial interest to maximize the portion of recovery for attorneys' fees and costs. Requiring the special master to direct all payments to the petitioner generally would encourage counsel to keep the client apprised of the subtleties and details of the prosecution of the petition and to discuss directly and comprehensively with the client the proper allocation of the $30,000 available pursuant to Section 15(b).

In addition, allowing direct payments to counsel could produce an incentive for counsel to reveal against the client's will certain information about the client that could place the client in an unsympathetic light. For example, in the instant case, counsel disclosed to the special master certain statements and actions by his client concerning petitioner's unwillingness to cooperate in the prosecution of the petition, a factor that contributed to the special master's determination not to award fees directly to petitioner.

Not only could a mandate that all payments be made directly to the petitioner potentially help promote the petitioner's interests, but also such a mandate arguably could help the government assure that only proper payments are made. In some cases, the petitioner may have more information than the special master with respect to how much time and money counsel actually incurred in prosecuting the petition. Keeping the petitioner involved by directing all payments to the petitioner would help increase the likelihood that petitioner would alert the special master to unfounded claims by counsel.[3]

The court recognizes that analogous potential conflicts of interest exist between counsel and client in traditional litigation outside of the Vaccine Act and that the vast majority of counsel maintain their ethical integrity by consistently promoting their client's interests. The court also recognizes that if special masters did possess the discretion to make direct payments to counsel, in the course of exercising that discretion, special masters would consider all of the relevant circumstances and attempt, as the special master did here, to limit any possible harm to the client or to the government. But, as described above, a requirement that all payments under the Vaccine Act be made to the petitioner could further the interests of both the government and the petitioner by maximizing the petitioner's control over and participation in the prosecution of his or her petition. In addition, in situations where, as here, there apparently is an unexplained rift between client and counsel, such a requirement would assure that the client's interests remain of paramount concern.

The court is also aware that such a requirement of direct payment to the petitioner would present an obstacle for counsel in the rare situation where, as in the instant case, a misunderstanding or dispute arises between a petitioner and his or her counsel. But attorneys can protect their interests before such a situation arises. As in *Phillips*, the attorney can enter a written fee agreement with the client pursuant to which the client must immediately turn over to counsel any attorneys' fees and related costs recovered under the Vaccine Act. Such an agreement ordinarily would produce the appropriate payment forthwith, and if not, litigation costs to enforce the agreement likely would be low. In this regard, a requirement that all payments be made directly to the petitioner would encourage counsel to secure explicit written fee agreements and thereby eliminate possible disputes between the petitioner and counsel that the special master otherwise might have to resolve. Moreover, even in the absence of a written agreement, it would

---

**3.** Addressing the issue of misallocated funds, the special master relied upon General Order No. 9 of the Office of the Special Masters which requires that a signed statement from the petitioner as to the costs the petitioner incurred be included with any application for fees and costs. In this case, however, the special master, after trying in vain to obtain petitioner's input, awarded attorneys' fees without such a statement. In such a case, where the petitioner does not produce a signed statement under General Order No. 9, directing fees to the petitioner would provide an additional safeguard against misallocated fees and costs.

appear that an enforceable implied agreement would exist pursuant to which the petitioner would be obliged to turn over to counsel payments the petitioner received under the Vaccine Act to cover incurred, but not yet paid, attorneys' fees. Given this enforceable implied agreement, the court does not share the special master's belief herein that Ronan would be unlikely ultimately to secure payment of the attorneys' fees and costs due him if a check for attorneys' fees and costs were issued in the names of both petitioner and Ronan.

## VII.

The above discussion as to the potential benefits of a requirement that all payments be made directly to the petitioner does not reflect any conclusion by the court that such a requirement is the best resolution of the various policy considerations involved. Rather, the enumeration of these potential benefits simply supports the conclusion that Congress reasonably could have intended what it dictated in Section 15(b)—that payments be made directly "to a petitioner."

As to the policy factors that Congress actually considered, there is nothing in the legislative history cited by the parties to support the conclusion that Congress ever considered the possibility of granting special masters the authority to award compensation directly to counsel much less that Congress analyzed the resulting benefits and detriments of granting such authority. To the extent the legislative history cited by the parties addresses these issues at all, it supports the conclusion that Congress intended all elements of compensation, including attorneys' fees, to be paid to the petitioner. The pertinent House Report states:

> [C]ompensation would be paid to vaccine-injured persons for any unreimbursed past

costs incurred and any projected future costs for medical care and rehabilitation services and for actual and anticipated lost earnings. Compensation would also cover payments for pain, suffering and emotional distress, payments in the event of death, and reasonable attorney fees.

H.R.Rep. No. 99–908, 2d Sess., at 6344 (1986) (emphasis added).

Hence, the statutory wording, legal precedent, and legislative history all support the conclusion that all compensation payments under the Vaccine Act be directed "to a petitioner."[4] The court concludes that the special master committed legal error by interpreting his authority differently.

### Conclusion

For the reasons set forth above, the court concludes that the special master erred as a matter of law when he determined that he had the authority to issue compensation covering attorneys' fees and costs directly to counsel. Accordingly, the court remands this action to the special master for a decision on attorneys' fees consistent with this opinion.

IT IS SO ORDERED.

---

4. Section 15(f)(4)(B), which applies only to pre-Act vaccinations, allows the special master some discretion with respect to compensation payments. Section 15(f)(4)(B) provides that "compensation ... shall be paid ... in a lump sum of which all or a portion may be used as ordered by the special master to purchase an annuity or otherwise be used, with the consent of the petitioner, in a manner determined by the special master to be in the best interests of the petitioner. Any reasonable attorneys' fees and costs shall be paid in a lump sum." Because the special master may exercise this discretion only upon the consent of the petitioner, this provision would not apply in a situation like the instant case where the special master determines that compensation should be paid directly to counsel for fear that the petitioner will not turn over the funds. In any event, this section does not grant the special master discretion with respect to attorneys' fees, which must be paid in a lump sum.